STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v.
WILLIAM BANKSTON, DEFENDANT-RESPONDENT.

Argued April 23, 1973—Decided June 26, 1973.

*Mr. David Rhoads,* Assistant Prosecutor, argued the cause for appellant (*Mr. Joseph P. Lordi,* Essex County Prosecutor, attorney).

*Mr. Edward P. Hannigan,* Assistant Deputy Public Defender, argued the cause for respondent (*Mr. Stanley C. Van Ness,* Public Defender, attorney).

The opinion of the Court was delivered by

COLLESTER, P. J. A. D., Temporarily assigned. Defendant was convicted of the unlawful possession of heroin and sentenced to a term of 12 months in the county penitentiary.

On appeal, the Appellate Division reversed the conviction in an unreported opinion and remanded the case for a new trial. The Appellate Division held that hearsay testimony of a police officer's conversation with an informer was erroneously admitted into evidence and that its admission, together with the prosecutor's reference thereto, constituted reversible error. This court granted the State's petition for certification. 62 *N. J.* 261 (1973).

The State's proofs indicated that at approximately 10:15 P.M. on January 28, 1971, acting on an informer's tip, four Newark detectives went to a tavern known as Charlie's Lounge. Before entering they looked through a window and saw defendant and three other black males inside. Defendant was seated at the middle of the bar. No other person was seated within three or four bar stools from him. Defendant was wearing a green jacket, a gray hooded sweatshirt and blue pants which matched the description of the clothing of the man they were looking for.

The detectives entered the tavern and approached defendant who was then standing up. As they were identifying themselves, one of the officers, Detective Walsh, noticed a pair of gloves on the bar near where defendant had been seated, which had a "distinguishable bulge protruding." The detective picked up the gloves and found a stack of 16 glassine envelopes underneath. (The contents of the envelopes were subsequently found to contain heroin.) Defendant was placed under arrest and searched but no narcotics were found on his person.

Detective Genzone, one of the arresting officers, testified that when they entered the tavern the gloves were on the bar in front of defendant and he observed Detective Walsh pick them up and pull the stack of glassine envelopes from underneath. He also said that on the bar in front of defendant there was a drink, some change and a package of cigarettes. However, Genzone's recollection of other details of the arrest were hazy. The detective could not remember which way defendant was facing while seated at the bar,

whether he was watching a game of pool being played, whether the police found a jacket on the bar stool on which defendant had been seated, or whether defendant denied ownership of the gloves when the narcotics were found.

Detective Walsh, the only other officer to testify, said that the gloves were on the bar about one and a half to two feet away from where defendant was standing. He also said that when confronted with the glassine envelopes defendant denied ownership of the gloves, the change, the drink and the cigarettes. The detective further testified that after defendant was placed under arrest he asked for the cigarettes and change which were on the bar next to the gloves. On cross-examination the witness admitted he had not noted this last fact in his arrest report nor had the cigarettes and change been seized as evidence.

At the close of the case the court granted the State's motion requiring defendant to try on the gloves in the presence of the jury. Defendant did not testify or call any witnesses on his own behalf.

The Appellate Division's decision was based on testimony given by Detective Genzone and comments made by the prosecutor.

During his opening statement the prosecutor told the jury, over defendant's objection, that the detectives "were actively engaged in an investigation of this man" and that the investigation led them to the tavern where they saw defendant and approached him.

Detective Genzone testified that shortly before defendant was arrested the officers had been talking to an informer and that based on information received they went to the tavern. He said that before entering he saw four black males inside whom he did not know by name. He testified, "* * * we were looking for a certain individual. We had a description of his clothing. He was inside the tavern. * * * We were looking for an individual that had narcotics in his possession." Defense counsel's objection was sustained, the court

stating, "I will sustain the objection and permit the prosecutor to ask a different question, whether a person they were looking for was found and what his description was." The prosecutor then asked, "Detective, you have already indicated that one of the persons fit the description that you were looking for, is that correct?" and the witness responded affirmatively. Thereafter Genzone again referred to defendant as "the person we were looking for, the description of the person that we were looking for." And when Detective Walsh subsequently testified he said that before entering the tavern he saw four black males inside, "one of them fitting the description that we had obtained."

During his summation to the jury the prosecutor also referred to the informer's identification of defendant. He said, "Well, first we heard that prior to entering the bar there was some kind of an investigation, that when they went to the bar they had a description —." Defense counsel's objection was overruled, and the prosecutor continued:

— that when they entered this bar they had a description that they were looking for a particular person, that when they looked in the window of the bar they saw four people. They did not go to all four people. As Detective Genzone said, they were looking for someone who was wearing a gray hooded sweatshirt, and that person was —

Defense counsel again objected. At a side bar conference he argued that the prosecutor was using the testimony concerning prior information the police had obtained to draw an inference of guilt. The trial judge agreed that the prosecutor's remarks were improper because his suggestion that defendant had been the subject of a police investigation could lead to the inference that the officers must have had reason to believe that defendant was committing a crime.

The judge then advised the jury he had sustained defense counsel's objection and said:

I will instruct you to disregard those remarks of the prosecutor pertaining to any other type of investigation or description.

Immediately thereafter the prosecutor told the jury, "So, ladies and gentlemen, the detectives did see this man and went directly to him."

In his charge the judge made no reference to the informer or any inferences that could be drawn from Genzone's testimony.

The Appellate Division held that Detective Genzone's testimony was clearly capable of an inference that the police had been told by an informer that defendant would be in the tavern with narcotics in his possession and as such it was inadmissible and prejudicial hearsay. The court further held that the trial judge's curative instructions did not, with sufficient clarity and force, relate to the objectionable references so as to remove them from the minds of the jury.

The State contends the testimony was not hearsay because it was not offered to prove that defendant was engaged in narcotics activities but to explain what prompted the police to go to the tavern and approach defendant. It is further contended that the Appellate Division erred in concluding that the testimony implied that the police had been told that defendant had possession of narcotics.

 It is well settled that the hearsay rule is not violated when a police officer explains the reason he approached a suspect or went to the scene of the crime by stating that he did so "upon information received." *McCormick, Evidence* (2d ed. 1972), § 248, *p.* 587. Such testimony has been held to be admissible to show that the officer was not acting in an arbitrary manner or to explain his subsequent conduct. *State v. Lopez,* 182 *Kan.* 46, 318 *P.* 2d 662, 666 (Sup. Ct. 1957); *State v. Barnes,* 345 *S. W.* 2d 130, 132 (Mo. Sup. Ct. 1961); *Foster v. Commonwealth,* 209 *Va.* 297, 163 *S. E.* 2d 565 (Sup. Ct. App. 1968). However, when the officer becomes more specific by repeating what some other person told him concerning a crime by the accused the testimony violates the hearsay rule. *Evidence*

*Rule* 63; *Smith v. United States,* 70 App. D. C. 255, 105
*F.* 2d 778, 779 (D. C. Cir. 1939); *Martin v. State,* 151
*Tex. Cr. R.* 140, 205 *S. W.* 2d 599 (Ct. App. 1947); *United
States v. Johnson,* 439 *F.* 2d 885, 888 (5 Cir. 1971), *cert.*
denied, *sub nom., Golub v. United States,* 404 *U. S.* 880,
92 *S. Ct.* 213, 30 *L. Ed.* 2d 161 (1971). Moreover, the
admission of such testimony violates the accused's Sixth
Amendment right to be confronted by witnesses against him.
*Favre v. Henderson,* 464 *F.* 2d 359, 364 (5 Cir. 1972),
*cert.* denied 409 *U. S.* 942, 93 S. Ct. 235, 34 *L. Ed.* 2d 193
(1972); *People v. Harris,* 41 *Mich. App.* 389, 200 *N. W.*
2d 349, 350 (Ct. App. 1972); and see *State v. King,* 112
*N. J. Super.* 138 (App. Div. 1970), aff'd 59 *N. J.* 525
(1971).

The Appellate Division cited *State v. Niesbbalski,* 82
*N. J. L.* 177 (Sup. Ct. 1911) in support of its conclusion
that Genzone's testimony, in light of the logical inferences
to be drawn therefrom, was inadmissible hearsay. In that
case the defendant and three other men were indicted for
felonious assault while attempting to rob a building and
loan association. Niesbbalski was tried alone and convicted.
At the trial only one witness was able to identify defend-
ant as one of the men who took part in the hold-up. At
the conclusion of his testimony the prosecution put the ar-
resting officer on the stand. He testified, over objection, that
the complaint charging defendant with being one of the
persons engaged in the crime had been based upon information
supplied to the officer by two of the other defendants named
in the indictment. On appeal the conviction was reversed.
The court concluded that by necessary inference the officer's
testimony was a declaration that the co-defendants had
told him defendant had participated in the hold-up. The
court stated that the effect thereof was to lay before the
jury statements of the two men, not made under oath and
subjected to cross-examination, which implicated defendant
in the crime charged, and therefore such testimony was in-
admissible hearsay.

Courts in other jurisdictions have considered the question of whether a hearsay inference may be drawn from an informer's tip. In *Favre v. Henderson, supra,* a police officer testified that he arrested defendant for armed robbery as a result of information he had received from two confidential informers. He further testified that the informers were reliable and that information received from them in the past had resulted in the convictions of other persons. The court held that the logical inference from the officer's testimony was that the informers had given information to the officer which led him to believe that the defendant was guilty and to arrest him. The court stated that inherent in the testimony was an assertion by an out-of-court declarant as to guilt. The court concluded that the testimony, when considered in light of its logical inferences, was hearsay and that defendant had been denied his constitutional right of confrontation because the testimony "led to the clear and logical inference that out-of-court declarants believed and said that Favre was guilty of the crime charged." (464 *F*. 2d at 364).

In *People v. Harris, supra,* the court held that a police officer's testimony as to the nature of reports by an unidentified individual with a description of an automobile allegedly used in the hold-up of a gas station deprived defendant of his constitutional right to be confronted with witnesses against him.

The State argues that courts have permitted police officers to testify as to information received from an informer concerning the accused. It cites *United States v. Miguel,* 340 *F*. 2d 812 (2 Cir. 1965), *cert.* denied 382 *U. S.* 859, 86 S. Ct. 116, 15 *L. Ed.* 2d 97 (1965) and *United States v. Li Fat Tong,* 152 *F*. 2d 650 (2 Cir. 1945) in support of its position. We are satisfied that these cases are inapposite. In both cases the testimony was produced at hearings on motions to suppress evidence. It was admitted solely for the purpose of showing that the officers had

probable cause to arrest the defendant and not to prove his guilt of the crime.

The State also claims that the inference which the Appellate Division concluded could be drawn from Genzone's testimony is always possible even when a police officer simply testifies that he went to a certain place "based on information received." However, we are not concerned with mere possible inferences. When the logical implication to be drawn from the testimony leads the jury to believe that a non-testifying witness has given the police evidence of the accused's guilt, the testimony should be disallowed as hearsay.

 Although in the present case the police officers never specifically repeated what the informer had told them, the inescapable inference from Genzone's testimony was that the informer had given information that defendant would have narcotics in his possession. Thus the jury was led to believe that an unidentified informer, who was not present in court and not subjected to cross-examination, had told the officers that defendant was committing a crime. The testimony was clearly hearsay.

The State further contends that Genzone's testimony was admissible under *Evidence Rule* 4 because it was offered for the sole purpose of explaining why the police went to the tavern. It argues that under the *Evidence Rule* 4 balancing test, where the probative value to the State's case is weighed against the prejudice to the defendant, the testimony was properly admitted. We cannot agree.

 *Evidence Rule* 4 deals with the exclusion of evidence. The purpose of the rule is to provide that evidence, *otherwise admissible*, may be excluded if the trial judge, in his discretion, finds that its probative value is outweighed by the risk that it will create substantial danger of undue prejudice to the defendant. See *Comment* 4–1, *New Jersey Rules of Evidence* (1972). Therefore, if the evidence is inadmissible hearsay the rule is not applicable.

In the instant case there was no need for any reference to an informer or to explain that the police were looking for a person described by the clothing he was wearing. There was no allegation that the police were acting arbitrarily. Testimony that they had gone to the tavern "based upon information received" would have been sufficient to explain their actions.

As noted above, the Appellate Division held that the trial court's curative instructions were insufficient to remove the objectionable references by the police to the information given by the informer. The State claims that the Appellate Division's assumption that the curative instructions were of fictitious value was unwarranted. We disagree.

It is apparent from the record that the prosecutor was well aware of the necessity of proving a connection between the heroin on the bar and the defendant. He attempted to bolster the State's case by referring in his summation to the prior investigation of the police; that when they entered the tavern they had a description of the clothes which would be worn by the man they were looking for, and that the police did not approach any of the other people in the bar but went directly to the defendant. The prosecutor was clearly referring to Genzone's testimony. The trial court's curative instructions were limited solely to the prosecutor's remarks. There was no reference to the hearsay testimony which had been previously given by Genzone. We are satisfied that the instructions did not remove the prejudicial effect of that testimony from the minds of the jury. See *State v. King, supra,* 112 *N. J. Super.* at *pp.* 142–143.

Finally, the State asserts that even if Genzone's testimony was hearsay the admission thereof was harmless error because there was ample other evidence of defendant's guilt. Although the evidence was sufficient, nonetheless the record presented a debatable case for the jury. We cannot say the proof was so overwhelming as to foreclose a real possibility that the jury gave decisive weight to the improper hearsay

testimony. That the jury found the case one of some difficulty is revealed by the fact that the jury interrupted its deliberations and requested the judge to clarify testimony given by Walsh. It wanted to know if the detective had testified as to whether the gloves belonged to defendant, whether defendant denied ownership of the gloves when he was confronted with the heroin, and which way Bankston was facing while at the bar.

■ The test of whether an error is harmless depends upon some degree of possibility that it led to an unjust verdict. The possibility must be real, one sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached. *State v. Macon,* 57 *N. J.* 325, 335–336 (1971). Or, as stated in *Fahy v. Connecticut,* 375 *U. S.* 85, 86–87, 84 *S. Ct.* 229, 230, 11 *L. Ed.* 2d 171, 173 (1963), "The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction."

■ Upon a review of the entire record we cannot agree with the State's contention that the admission of the hearsay testimony was harmless error. We are satisfied that the testimony may well have been the decisive factor which resulted in the guilty verdict.

The judgment of the Appellate Division is affirmed.

*For affirmance* — Chief Justice WEINTRAUB, Justices JACOBS, PROCTOR, MOUNTAIN and SULLIVAN, and Judges LEWIS and COLLESTER—7.

*For reversal*—None.