711 A.2d 363 (1998)
312 N.J. Super. 102
STATE of New Jersey, Plaintiff-Respondent,
v.
Herron ALSTON, Defendant-Appellant.
STATE of New Jersey, Plaintiff-Respondent,
v.
Reginald DAVIS, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued March 23, 1998.
Decided May 29, 1998.
*364 Paul Casteleiro, Hoboken, for defendant-appellant Herron Alston (Mr. Casteleiro, on the brief).
Gilbert G. Miller, Somerville, for defendant-appellant Reginald Davis (Wronko, O'Hara & Miller, attorneys, Mr. Miller, of counsel and on the brief).
Debra A. Owens, Deputy Attorney General, for plaintiff-respondent (Peter Verniero, Attorney General, attorney, Ms. Owens, of counsel and on the brief).
Before Judges PETRELLA, SKILLMAN and STEINBERG.
The opinion of the court was delivered by
STEINBERG, J.S.C., T/A
An Essex County Grand Jury jointly charged each defendant, in a four-count indictment, with having committed the following offenses in Newark, New Jersey on January 6, 1995:(1) conspiracy to commit murder, *365 in violation of N.J.S.A. 2C:5-2 and N.J.S.A. 2C:11-3, (Count One); (2) purposeful or knowing murder of Paul Magliaro by their own conduct, in violation of N.J.S.A. 2C:11-3a(1)-(2), (Count Two); (3) possession of a firearm, a handgun, without a permit to carry, in violation of N.J.S.A. 2C:39-5b, (Count Three); and (4) possession of a firearm, a handgun, with a purpose to use against the person or property of another, in violation of N.J.S.A. 2C:39-4a, (Count Four).
At the time of the offense Reginald Davis was a juvenile. However, after a hearing, a judge assigned to the Superior Court, Chancery Division, Family Part, referred the case to the Law Division for further prosecution pursuant to N.J.S.A. 2A:4A-26. A jury found both defendants not guilty of conspiracy on Count One, guilty of aggravated manslaughter, as a lesser-included offense on Count Two, and guilty of the weapons offenses on Counts Three and Four. The trial judge granted the State's motion to sentence Alston to an extended term as a persistent offender and imposed a sentence of life in prison with twenty-five years to be served without parole on Count Two and a concurrent five-year term in prison on Count Three. Count Four was merged into Count Two. The appropriate penalties and assessments were also imposed.
The trial judge sentenced defendant Davis to thirty years in prison with fifteen years to be served without parole on Count Two and a concurrent five-year term in prison on Count Three. Again, Count Four was merged into Count Two. The appropriate monetary penalties and assessments were imposed. Although separate notices of appeal were filed and the cases were not consolidated, we now consolidate and dispose of these appeals in one opinion.
On January 6, 1995, between 11:00 and 12:00 p.m., Deborah Bennett was looking out a second-floor window of her home at 622 Sanford Avenue, Newark, New Jersey, when she observed a car stop at the traffic light at the intersection of Sanford Avenue and Eighteenth Street. The vehicle began to drift through the red light and onto the sidewalk past Ms. Bennett's house. It came to rest at a fence in front of 630 Sanford Avenue. Newark Police were dispatched to the scene. They found the driver's side window of the car shattered into the car's interior. There was blood and glass on the front seat and the floor of the car. The victim had been shot. He was transported to the hospital and pronounced dead of a gunshot wound to the chest and left arm.
Newark Police Detective Rashid Sabur was assigned as the lead investigator in the investigation. He was initially unsuccessful in locating any witnesses to the homicide.
On January 9, 1995, another homicide by gunfire occurred in the same vicinity. Detective Miguel Marquez of the Newark Police Department was the lead investigator in that case. During his investigation of that homicide, Detective Marquez was informed that the assailant was hiding inside 43 Silver Street, about four blocks away from that homicide. The officers approached the residence and observed an unidentified person toss five vials of cocaine out a bedroom window. They found fifteen-year old Malika Williams, Lamar Brown and two other persons in that bedroom as well as a plastic bag containing thirty vials of cocaine and $147. Malika and Lamar informed the police they were eyewitnesses to the January 9 homicide. Based upon his investigation, Detective Marquez gave Detective Sabur a list of potential witnesses to the homicide Sabur was investigating. Malika Williams and Lamar Brown were on the list.
On the evening of January 29, 1995, Detective Sabur saw defendant Reginald Davis (Davis) on the street with two other individuals in the area of the shooting. Sabur questioned them as potential witnesses. Davis told Detective Sabur that he lived at 48 Dover Street, Newark. Detective Sabur asked Davis why he was in the area and Davis responded that this was his first time in the area. Davis denied knowing anything about the homicide. Davis and the other two individuals were then transported to Detective Sabur's office for further interview. Detective Sabur obtained their names and addresses, dates of birth, and received their permission to take photographs of them. They were released that evening.
*366 Shortly after Davis and the two other individuals were released, Detective Sabur received an anonymous telephone call. The caller identified "Ron" and "Big Reg" as suspects in the killing. The caller also stated that they lived on Dover Street, two blocks away from the homicide. As a result, Detective Sabur contacted Davis's mother who told him she knew someone named Ron who lived on Dover Street. Based upon that information, Detective Sabur obtained a photograph of Herron Alston (Alston) from the Essex County Prosecutor's Office.
On January 12, 1995, Detective Sabur contacted Malika Williams over the telephone. She did not go to police headquarters at that time. She asked Detective Sabur if her grandmother would find out that she was speaking to him. Because of that, Detective Sabur suspected she knew something about the homicide. Further attempts to canvas the area in an effort to locate potential witnesses were unsuccessful.
On February 9, 1995, Detective Sabur went to Malika Williams home in an effort to find her grandmother. He spoke with Malika's aunt who encouraged Malika to accompany Detective Sabur and Investigator Koonce to their office and speak to them about the investigation. Malika gave a statement in which she said that she was standing on the porch of 43 Silver Street with her boyfriend, Lamar Brown, when she saw Davis and Alston talking to a man in a car. She heard Alston say, "Ain't you the one who beat me in the summertime" and she then heard Davis tell Alston to shoot the man. She saw Alston reach into his coat, pull out a gun, and shoot the victim. Alston and Davis fled and Malika and Lamar went into the home.
On February 16, 1995, Detective Sabur went to Lamar Brown's place of employment and asked Brown to come to his office for questioning about the shooting. According to Sabur, Brown came voluntarily and gave a statement corroborating Williams' account. He also identified each defendant in separate photo arrays.
Prior to trial, Brown recanted his February 16 statement claiming that Sabur and another detective had elicited the statement by beating him. He also claimed they threatened to incarcerate him as a material witness if he did not speak with them. At trial he maintained that his statement to the police was false. However, his statement was admitted as substantive evidence. See N.J.R.E. 803(a)(1)(A).
In his opening statement to the jury, the trial prosecutor made reference to the anonymous caller's information and stated that the information led directly to defendants as suspects. He argued as follows:
The evidence will show you that the police received some information and from that information they were able to develop two suspects, I submit to you the two defendants are seated at counsel table.
At trial, Malika Williams was called as a State's witness. She testified that she saw Alston shoot the victim at the urging of Davis after Alston said to the victim "ain't you the one that beat me in the summertime?" However, she was confronted with a number of inconsistencies with her prior statement, and her testimony at the waiver hearing. For example, at trial she stated that she was sitting with Lamar Brown on the front steps of her porch when the incident occurred notwithstanding the fact that there was an icy rain storm at the time. She testified that if she had been standing in the middle of the porch as she initially stated, her view would have been blocked by a tree. Contrary to her earlier statement, she said that she never saw the handgun. Faced with this contradiction, she claimed, "I made a little correction, okay? I don't remember everything." She then stated that she could not remember if she saw a gun that evening.
She also testified that she accompanied Detective Sabur to the police department for questioning because he told her he would call the Division of Youth & Family Services and have her incarcerated. She further testified that she initially told Detective Sabur she knew nothing about the shooting. She claimed he threatened to place her on a polygraph and that she became frightened and gave a statement implicating defendants.
At trial, Detective Sabur was permitted to testify, over objection from Davis, that on *367 January 12, 1995, she received a telephone call from an anonymous male caller who told them that "Ron" and "Big Reg" who both lived on Dover Street, in Newark, were suspects in the crime. The testimony concerning the content of the anonymous call was, as follows:
Q. Now, again, without telling us the specific information received, did you receive information concerning a suspect or suspects, actual potential suspects or suspects regarding your homicide.
MR. ALTWARG: [Attorney for codefendant Davis] Object.
THE COURT: Overruled. Just yes or no.
A. Yes.
Q. And did you receive names, a name or names?
A. I received a partial name.
Q. And how about an address of the individual?
A. I didn't receive an address, but I received the name of an individual, and the name of the street where the individual supposedly lived.

* * *
Q. Now, based on the information that you received, are you looking for males or females?
A. Two males.
Q. And based on the information you received, what is thestrike thatdo you have a name?
A. Partial name.
Q. Or names? What was the partial names you were looking for?
MR. ALTWARG: Object.
THE COURT: Overruled.
A. Ron and Big Reg.
Q. And was there an area now that you wanted to look into to locate these individuals?
MR. ALTWARG: Continuing objection. May we approach side bar?
THE COURT: All right.
(The following at side bar:)
MR. ALTWARG: this is all hearsay evidence based on an anonymous phone call and so far the prosecutor has been allowed to come out with the addresses, names, and so on, all received as a result of some anonymous phone call from somebody nobody even know.
I think it'swell, that's about it.
MR. FARMAN: It is not being offered for the truth of the matter these defendants are guilty of the crimes charged, but offered to explain.
THE COURT: Why the officer did what he did.
MR. FARMAN: Exactly.
THE COURT: Ultimately got to the particular individuals.
MR. FARMAN: Yes.
MR. ALTWARG: Your Honor, if the testimony is to the effect that as a result of the phone call, what did you do, that's a different thing, but to have him say that I received the names in that phone call, that to me is a different ball game altogether.
Here is the caller. He is testifying the caller gave him these names.
THE COURT: It comes out the same way. It is not being offered to prove these individuals were the persons who actually committed the crime, to explain why the officers continued this investigation in the manner they did.
MR. FARMAN: As a matter of fact I am sorry.
THE COURT: You can ask the question differently than the way you just suggested.
MR. FARMAN: Okay.
(End of side bar discussion.)
Q. Officer, based on the information received, is there an area where you want to look?
A. Yes, there.
Q. Where was that, sir?
A. For the individuals, the area was Dover Street.
Q. In Newark?
A. Yes, that's correct.
*368 Q. Where is Dover Street, sir, in relation to the area of Sanford and Silver?
A. Not very far. It's a few blocks away."
Without objection, Detective Sabur testified that Malika gave considerably more information than the anonymous information, and that it was consistent with the anonymous information.
During summation, the prosecutor argued, in obvious reference to the anonymous call, that all information from the beginning of the investigation revolved around the defendants. He argued as follows:
Ladies and Gentlemen, from the time the police started getting information about this homicide, it always, always revolved around Big Reg and Ron.
That's where it started, and it never came off that, ...
The prosecutor then argued that Malika was believable because she corroborated the anonymous caller's information.
On appeal, defendant Alston argues as follows:
POINT I
THE ADMISSION INTO EVIDENCE OF AN ANONYMOUS CALLER'S DIRECT IMPLICATION OF THE DEFENDANT VIOLATED THE DEFENDANT'S SIXTH AMENDMENT RIGHT TO CONFRONTATION MANDATING REVERSAL OF HIS CONVICTIONS.
POINT II
THE ADMISSION OF JOHN COCCIA'S TESTIMONY REGARDING THE DECEDENT'S SO-CALLED HABIT, WHICH PURPORTED TO SHOW HIS `CONCERN' TO PROVE THE DEFENDANT'S MOTIVE DEPRIVED THE DEFENDANT OF HIS RIGHT OF CONFRONTATION AND FAIR TRIAL, AND VIOLATED RULES 406 AND 404(A)(2) OF THE NEW JERSEY RULES OF EVIDENCE.
POINT III
THE STATE IMPROPERLY BOLSTERED THE CREDIBILITY OF MALIKA WILLIAMS IN ASSERTING SHE COOPERATED UNDER THE THREAT OF BEING ADMINISTERED A POLYGRAPH TEST AND IN DOING SO DENIED THE DEFENDANT HIS RIGHT TO A FAIR TRIAL.
POINT IV
THE STATE'S FAILURE TO DISCLOSE MALIKA WILLIAMS' INVOLVEMENT IN A DRUG BUST AT 43 SILVER STREET, IN RESPONSE TO A SPECIFIC REQUEST BY THE DEFENDANT, IN COMBINATION WITH THE STATE'S AFFIRMATIVE REPRESENTATION TO THE COURT THAT THE EVENT NEVER OCCURRED, DEPRIVED THE DEFENDANT OF HIS RIGHTS TO DUE PROCESS OF LAW, A FAIR TRIAL AND CONFRONTATION.
POINT V
THE TRIAL COURT'S FAILURE TO ISSUE LIMITING INSTRUCTIONS CONCERNING JOHN COCCIA'S HABIT TESTIMONY, ASSUMING FOR ARGUMENT'S SAKE THE TESTIMONY CONSTITUTED HABIT EVIDENCE, WAS ERROR.
POINT VI
THE PROSECUTOR'S ARGUMENT IN SUMMATION THAT THE ALIBI WITNESSES FAILED TO COME FORWARD AND WERE LYING BECAUSE OF WHERE THEY LIVED DEPRIVED THE DEFENDANT OF HIS RIGHT TO A FAIR TRIAL.
POINT VII
THE CUMULATIVE EFFECT OF THE ERRORS IN THE TRIAL COURT DENIED THE DEFENDANT A FAIR TRIAL.
On appeal, defendant Davis argues as follows:
POINT I
THE STATE'S FAILURE TO DISCLOSE MALIKA WILLIAMS'S INVOLVEMENT IN A DRUG RAID AT 43 SILVER STREET DEPRIVED MR. DAVIS OF HIS RIGHT TO DUE PROCESS OF LAW, FUNDAMENTAL FAIRNESS AND THE CONFRONTATION OF THE WITNESSES AGAINST HIM.
*369 POINT II
DET. SABUR'S TESTIMONY AS TO THE SUBSTANCE OF THE ANONYMOUS TELEPHONE CALL IN THIS MATTER CONSTITUTED INADMISSIBLE HEARSAY AND VIOLATED MR. DAVIS'S SIXTH AMENDMENT CONFRONTATION RIGHTS.
POINT III
THE TESTIMONY OF JOHN COCCIA WAS INADMISSIBLE HABIT TESTIMONY; AS IT WAS PROBATIVE ONLY AS TO THE DECEDENT'S STATE OF MIND, IT WAS NOT RELEVANT TO ANY MATERIAL ISSUE.
POINT IV
THE PROSECUTOR AND DET. SABUR ENGAGED IN REVERSIBLE MISCONDUCT. (Partially raised below).
POINT V
THE STATE IMPROPERLY BOLSTERED MALIKA WILLIAMS'S CREDIBILITY BY ASSERTING THAT HER ALLEGATIONS WERE MADE IN RESPONSE TO A THREAT TO ADMINISTER A POLYGRAPH TEST. (Not raised below).
POINT VI
THE ERRORS IN THIS CASE INDIVIDUALLY AND CUMULATIVELY REQUIRE THE REVERSAL OF MR. DAVIS'S CONVICTIONS.
POINT VII
THE MAXIMUM 30-YEAR SENTENCE WITH A 15-YEAR PAROLE DISQUALIFIER IMPOSED UPON THE 18-YEAR OLD DEFENDANT WAS MANIFESTLY EXCESSIVE.
We agree with defendants' argument that Detective Sabur's testimony as to the substance of the anonymous phone call was inadmissible hearsay which violated their Sixth Amendment right to be confronted by the witnesses against them, and accordingly reverse their convictions.
Detective Sabur's testimony that an anonymous telephone caller identified "Big Reg" and Ron as suspects in the shooting was clearly hearsay and should not have been admitted. "It is well settled that the hearsay rule is not violated when a police officer explains the reason he approached a suspect or went to the scene of the crime by stating that he did so `upon information received.'" State v. Bankston, 63 N.J. 263, 268, 307 A.2d 65 (1973). Such testimony is admissible to show that the officer was not acting in an arbitrary manner, or to explain his subsequent conduct. Ibid. However, when the officer becomes more specific by repeating what some other person told him concerning a crime by the accused, the testimony violates the hearsay rule as well as defendant's Sixth Amendment right to be confronted by the witnesses against him. State v. Irving, 114 N.J. 427, 444, 555 A.2d 575 (1989); State v. Bankston, supra, 63 N.J. at 268-69, 307 A.2d 65. Furthermore, when the logical implication to be drawn from the testimony leads the jury to believe that a non-testifying witness has given the police evidence of the defendant's guilt, the testimony should be disallowed as hearsay. State v. Irving, supra, 114 N.J. at 444-48, 555 A.2d 575; State v. Bankston, supra, 63 N.J. at 271, 307 A.2d 65; State v. Baker, 228 N.J.Super. 135, 140, 549 A.2d 62 (App.Div.1988). Here, there is no issue of implication or inference. The evidence clearly and expressly brought before the jury a statement by an anonymous telephone caller implicating defendants by name in the commission of this offense. That statement was not under oath, and was not subjected to cross-examination.
The State argues that the testimony of Detective Sabur regarding the anonymous telephone call was necessary to explain why an unusual investigation progressed in the manner in which it did. In support of that position, the State argues that the testimony was necessary to demonstrate why the police went to Davis' mother in an effort to find out who Ron was, and also to demonstrate how the police ended up discussing this homicide with Malika Williams since she was initially a witness to a different, unrelated homicide. While this evidence may have been beneficial to the State, and relevant, it still was hearsay and inadmissible. The State's objective would have been accomplished if it merely elicited testimony that Detective Sabur interviewed Mrs. Davis and Malika Williams, "based upon information received." *370 State v. Bankston, supra, 63 N.J. at 268, 307 A.2d 65. Had the testimony been elicited in that fashion the State would have shown that the officers did not act in an arbitrary fashion, and the defendants' constitutional right of confrontation would have been preserved.
The State also argues that the evidence was offered, not to prove the truth of the matter asserted, but merely to show why the officers acted in the way they did. See N.J.R.E. 801(c). However, even if the contents of the telephone call were not offered to prove the truth of the matter asserted, they should have been excluded under N.J.R.E. 403 because their probative value was substantially outweighed by the risk of undue prejudice. We conceive of very little that could be more prejudicial or more harmful than to admit an out-of-court declaration by an anonymous witness implicating defendant in the crime for which he stands trial which is not subjected to cross-examination, under the guise that the statement is not offered to prove the truth of the matter asserted. The line of demarcation the State attempts to draw is much too tenuous. State v. Manning, 82 N.J. 417, 422, 413 A.2d 605 (1980).
We next consider the State's contention that even if the testimony concerning the anonymous telephone call and its contents was improper, the error was harmless in light of the otherwise compelling evidence of defendants' guilt. Only those trial errors that are deemed to be of such a nature as to have been clearly capable of producing an unjust result require reversal. R. 2:10-2. Whether an error is reason for reversal depends upon some degree of possibility that it led to an unjust verdict. State v. Macon, 57 N.J. 325, 335, 273 A.2d 1 (1971). The possibility must be real, one sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached. Id. at 336, 273 A.2d 1. Although not every constitutional error requires a new trial, the nature of the right infringed upon and its evident impact upon the fairness of a trial must be considered. Id. at 338, 273 A.2d 1. Here, unquestionably the error is of constitutional dimension. Accordingly, the harmless standard which must be applied is whether the State has proved beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710-11 (1967). Although there is very little, if any, practical difference between the standards in considering constitutional errors, we must use the standard set forth in Chapman. State v. Macon, supra, 57 N.J. at 341, 273 A.2d 1.
Initially, we note that the prosecutor did not merely make a fleeting reference to the contents of the anonymous telephone call. He referred to it in his opening statement to the jury, and then elicited it before the jury during the trial. In addition, during direct examination of Detective Sabur, he elicited the fact that the information he received from Malika Williams was consistent with the information he received from the anonymous informant, although she gave more information. Moreover, during summation, the prosecutor argued, in obvious reference to the anonymous call, that all information from the beginning of the investigation revolved around "Big Reg and Ron." The prosecutor further argued, "that's where it started, and it never came off that,...." He further argued, in an effort to bolster the credibility of Malika Williams, that she was believable because she not only corroborated the anonymous caller's information, but she also supplemented it with new information.
In addition, although the evidence presented to the jury was sufficient to convict each defendant, the proofs were considerably less than overwhelming. The testimony of the only two alleged eyewitnesses was significantly impeached. Lamar Brown recanted his statement inculpating defendants prior to trial and maintained his recantation at trial. Accordingly, the State was forced to rely upon his prior inconsistent statement incriminating each defendant was introduced into evidence. Malika Williams' testimony at trial was inconsistent in many important aspects with her prior statement and testimony at the waiver hearing. In addition, her testimony as to the circumstances under which she initially agreed to give a statement to Detective Sabur raised a question as to whether the statement was psychologically coerced.
*371 In deciding whether the error was harmless, we first note that the Sixth Amendment right of confrontation is a fundamental right essential to a fair trial in a criminal prosecution. Pointer v. Texas, 380 U.S. 400, 403, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923, 926 (1965). The aggregate effect of the nature of the right infringed upon, the denial of the right of confrontation, coupled with the extent to which the contents of the anonymous telephone call was used by the prosecution in the presentation of evidence and summation, when considered in conjunction with the nature of the evidence against defendants, leads to the inescapable conclusion that the error was not harmless beyond a reasonable doubt. Chapman v. California, supra; State v. Macon, supra. We are satisfied that the error may well have been the decisive factor in leading the jury to a verdict it might not otherwise have reached. Accordingly, the convictions must be reversed.
In light of our decision to reverse the convictions, we need not consider Davis' arguments regarding his sentence.
We have carefully reviewed the record, the applicable law, and the briefs filed and conclude that the remaining contentions raised by defendants are without merit. See R. 2:11-3(e)(2).
Reversed as to each defendant and remanded for new trial.