**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4211-15T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

    v.

BERNARD JONES, a/k/a JAMES
BERNARD,

    Defendant-Appellant.

_____

Submitted September 14, 2017 — Decided November 20, 2017

Before Judges Alvarez and Nugent.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment Nos. 14-01-0220 and 14-01-0222.

Joseph E. Krakora, Public Defender, attorney for appellant (Michele E. Friedman, Assistant Deputy Public Defender, of counsel and on the brief).

Robert D. Laurino, Acting Essex County Prosecutor, attorney for respondent (Lucille M. Rosano, Special Deputy Attorney General/ Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

    Tried by a jury, defendant Bernard Jones was convicted of

second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b), and fourth-degree certain persons not to have a weapon, N.J.S.A. 2C:39-7(a). On January 19, 2016, he was sentenced on the possession offense to nine years imprisonment subject to fifty-four months of parole ineligibility, and a concurrent eighteen months on the certain persons charge. He now appeals, contending that trial errors warrant reversal. Defendant also contends that the judge's failure to expand on his reasons for the sentence, and to order a mental health evaluation before imposing the sentence, warrant a remand. We do not agree and thus affirm.

We derive the following circumstances from the trial record. On September 18, 2013, at about 10:50 p.m., Newark Police Department Sergeant Joseph Frost was told by a guard stationed at the security gate of an apartment complex that there was a suspicious vehicle in the rear. Frost also testified that as he and his partner approached the area, they saw a black Pontiac with the interior and exterior lights on, windows partially rolled down. They left their patrol car and began to walk towards the Pontiac from both sides. Frost smelled marijuana and noticed an open can of beer in the front seat console. When defendant saw the officers, he raised his hands up in the air and said, "Oh shit, I'm caught. I'm going to jail." Frost immediately directed his flashlight into the car and saw a handgun on the floor between

defendant's legs. Detective Jesus Rivas patted defendant down once he was removed from the car, and recovered four rounds of ammunition from defendant's front right-hand pocket.

Defendant testified, and denied having been in possession of a gun, claiming he saw it for the first time when it was shown to him at the police station after his arrest. He also testified, contrary to the officers, that the ammunition was found in a baby's sock located in the pouch behind the passenger seat.

The vehicle's other occupants included defendant's sister, her best friend, and a cousin. Although he did not accuse anyone of being in possession of the gun, defendant implied that the officers "put it on him," despite the fact that the weapon and ammunition may have belonged to others in the car. When arrested, defendant had a box cutter in his pocket that he used at work.

In her closing argument, defendant's attorney noted that the handgun had no fingerprints. She reiterated defendant's statement that he had never seen the gun in the vehicle and knew nothing about it until he heard the officers say "gun" at the scene. Counsel focused on the conflicts in the testimony, suggesting to the jury that the gun was located elsewhere in the car and that because three of the four occupants of the vehicle were women, the officers charged defendant, the only man.

In response, the prosecutor said:

At the end of the day, though, the point that [defendant] wanted to make was clear he wanted to make it a point that all of the police pinned the gun on him; that the gun was pinned on him. They had it. They got it from somewhere else, they pinned it on him.

If the police wanted to pin this gun on this defendant don't you think they would have been done [sic] a better job of it? Let's start with everything that the police could have done if they were really out to pin it on this defendant.

He said that there was a blunt in the car. Well, drugs are against the law and [] Frost said he definitely smelled the smell of smoke. The defendant said they searched the car. Well, they searched the car and if they're out to pin things on the defendant where is the drug charge?

He said he had a box cutter on him. That's a weapon, ladies and gentlemen. Where is the weapon charge for the box cutter? The judge is going to tell you about the law and when you get the definitions for actual possession and joint possession and constructive possession, you're going of learn that under the facts, the police could have charged everybody in that car with possession of the gun.

Now, they didn't do that. They charged just the driver with the open container ticket because she had a Bud Ice in the center console. And then they charged the defendant with a gun.

[] Frost said the reason why he was charged with a gun was because it was in his possession. He had it, within arm's reach fully loaded ready to go. He also had the bullets in his pocket. That is indicative of possession [ ] in and of itself. When you look at the picture together that's compelling.

4

The defendant's own words, "Aw, shit. I'm caught. Hands up. I surrender." He was compliant. If the police were out to get him they could have said he resisted and charged him with something else. They didn't do that. They exercised their discretion. They charged appropriately and they arrested the one defendant, this man, for the gun.

During his presentence interview, defendant told the probation officer that at times he heard voices. He had never received treatment for a mental health condition, previously told anyone about this, was not on any medication, and was never diagnosed as having a mental illness.

On appeal, defendant raises the following points:

POINT I

THE PROSECUTOR COMMITTED MISCONDUCT BY BOLSTERING THE CREDIBILITY OF THE STATE'S WITNESSES AND BY MISCHARACTERIZING FROST'S TESTIMONY.

POINT II

THE STATE'S INTRODUCTION OF HEARSAY TESTIMONY FROM AN UNNAMED DECLARANT REGARDING THE SO-CALLED SUSPICIOUS NATURE OF THE VEHICLE WARRANTS REVERSAL.

POINT III

THE MATTER SHOULD BE REMANDED FOR RESENTENCING, BECAUSE THE SENTENCING COURT FAILED TO ADEQUATELY EXPLAIN THE BASIS FOR THE SENTENCE, AND THE NINE-YEAR TERM OF IMPRISONMENT WITH A 54-MONTH PAROLE DISQUALIFIER IS MANIFESTLY EXCESSIVE AND UNDULY PUNITIVE.

Neither of the first two points were raised during the trial. Accordingly, they do not warrant reversal unless the alleged error was "of such a nature as to have been clearly capable of producing an unjust result," or if it is in the interests of justice to do so. See R. 2:10-2.

## I.

We only reverse based on improper remarks made during summation when the conduct "was so egregious that it deprive[s] the defendant of a fair trial." State v. Frost, 158 N.J. 76, 83 (1999). Remarks are ordinarily not deemed prejudicial if no objection is raised at trial. Counsel's failure to object suggests that defense counsel "did not believe the remarks were prejudicial at the time they were made," and it also "deprives the court of an opportunity to take curative action." Id. at 84.

In this case, the prosecutor's remarks are unobjectionable and intended to refute defendant's testimony that the police "put it on him[,]" or that he was arbitrarily selected to be the person who would be charged with possession due to some unidentified animus. The prosecutor's comments merely pointed out that if falsely incriminating defendant had been the officers' purpose, they would have done a "better job of it[.]" Defendant was not charged with a marijuana offense, nor with possession of the box cutter. Only the driver was charged with an open container. The

6

prosecutor was merely arguing that charging defendant with only the gun offenses supported the credibility of the officer's testimony. This was fair comment on the evidence, and the reasonable inferences which could be drawn therefrom. See id. at 82-83. It was an appropriate response to defendant's summation.

The prosecutor's theme had to be witness credibility, because defendant contradicted the officers in essential respects. If defendant was believed, he would have been acquitted. Thus, pointing out the limited charges against defendant was not improper bolstering. Nor was it a mischaracterization of Frost's testimony.

II.

Defendant next contends that the officer's statement that police were directed to the rear of the apartment complex because a suspicious vehicle was parked in that area, violated his right of confrontation, and exceeded the permissible boundaries outlined in State v. Bankston, 63 N.J. 263 (1973), and State v. Branch, 182 N.J. 338 (2005). In Branch, an officer "testified that he included defendant's picture in a photographic array because he had developed defendant as a suspect 'based on information received.'" Id. at 342. He also testified to the out-of-court descriptions of a burglar given by "non-testifying child victims." Ibid.

The Court found the testimony to be "inadmissible hearsay that violated defendant's right of confrontation." Ibid. The

source of the information was not called as a witness, and defendant had no opportunity to cross-examine. Thus, the testimony violated defendant's constitutional rights. Id. at 348. The upshot of Bankston and Branch is that a police officer may not suggest to the jury that he has incriminating information about defendant, which information is not being shared with the jury.

A defendant has a constitutional right to confront his accusers. U.S. Const. art. VI; N.J. Const. art. I, ¶ 10; Branch, supra, 182 N.J. at 348. "The right of confrontation is an essential attribute of the right to a fair trial, requiring that a defendant have a 'fair opportunity to defend against the [s]tate['s] accusations.'" Branch, supra, 182 N.J. at 348 (quoting State v. Garron, 177 N.J. 147, 169 (2003), cert. denied, 540 U.S. 1160, 124 S. Ct. 1169, 157 L. Ed. 2d 1204 (2004)). Accordingly, statements made by non-testifying persons suggesting defendant is involved in unlawful conduct are excluded unless admissible on some other basis, and unless defendant had the opportunity for cross-examination. State v. Cabbell, 207 N.J. 311, 329-30 (2011) (citing Crawford v. Washington, 541 U.S. 36, 59, 124 S. Ct. 1354, 1369, 158 L. Ed. 2d 177, 197 (2004)). They must be excluded if they connect in some improper manner to the criminal prosecution being tried. Id. at 329.

These principles are not violated, however, when an officer explains, without excessive detail, the reason he approaches a suspect or goes to the scene of a crime. Bankston, supra, 63 N.J. at 268; see also State v. Luna, 193 N.J. 202, 217 (2007). As a result, an officer's explanation for his presence at the scene of a crime based on "information received" is not improper.

Thus the officer's explanation for going to the rear of the apartment complex did not violate defendant's right to confrontation. The guard's characterization of the vehicle did not implicate defendant in the crime. The officer's testimony merely explained his presence. His statement did not suggest that police had superior knowledge outside the record which would incriminate defendant, nor did it imply that he was the perpetrator of a crime. Hence, the admission of the testimony is not reversible error.

## III.

During the sentencing hearing, the prosecutor stated that the weapon recovered was loaded with six live rounds, and that in addition to a round in the gun's chamber, four live rounds were found in defendant's front right pants pocket. In addition to a juvenile record and disorderly persons convictions, defendant was convicted of third-degree unlawful possession of a handgun in 2007. Defendant was eligible for an extended term of twenty years

with ten years of parole supervision but because the issue was not raised when the matter was placed on the trial list, the State limited its request to a ten-year sentence of imprisonment subject to five years of parole ineligibility.

The judge found defendant was subject to the Graves Act, N.J.S.A. 2C:43-6(c). He also found that defendant had been given the benefit of probation, and had previously failed to complete it. In light of his criminal history, the judge found aggravating factors 3, 6, and 9 and no factors in mitigation. See N.J.S.A. 2C:44-1(a)(3), (6), and (9). After weighing the factors, the judge sentenced defendant to nine years subject to fifty-four months of parole ineligibility. The sentence does not shock our conscience. See State v. Roth, 95 N.J. 334, 363-64 (1984).

Finally, defendant's claim that his mention to the presentence report author that he heard voices should have resulted in a mental health evaluation lacks merit. It does not warrant discussion in a written decision. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION