**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4236-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

NERI R. SANCHEZ, a/k/a
PAUL A. ROTHMALLER,
NARRY SANCHEZ, and
NESS SANTIAGO,

     Defendant-Appellant.

_____

Submitted December 3, 2019 – Decided January 2, 2020

Before Judges Gilson and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Indictment No. 15-06-0684.

Joseph E. Krakora, Public Defender, attorney for appellant (Marcia H. Blum, Assistant Deputy Public Defender, of counsel and on the brief).

Jennifer Webb-McRae, Cumberland County Prosecutor, attorney for respondent (Andre R. Araujo, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

A jury convicted defendant Neri Sanchez of first-degree murder, N.J.S.A. 2C:11-3(a)(1) or (2), and second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a). The weapon conviction was merged into the murder conviction, and defendant was sentenced to sixty years in prison, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. Defendant appeals and argues that references to drugs and gangs during questioning by the police, a video recording of which was played for the jury, was reversible error and his sentence was excessive. We disagree and affirm.

I.

On November 14, 2014, J.C. was shot in the back of his head and died while at defendant's apartment.[1] The evidence at trial established that seven people were at defendant's apartment at the time of the murder: the victim, defendant, and five visitors.

One of the visitors, R.H., testified that on November 14, 2014, he was at defendant's apartment playing video games with the victim. According to R.H., defendant suddenly shot the victim in the back of his head, said, "fuck that n___," and walked out of the apartment. Another visitor, A.G., testified that he

---

[1] We use initials to protect the privacy interests of the victim and witnesses.

was in the kitchen when he heard a gunshot. A.G. then ran out of the apartment and defendant walked past him holding a gun.

Someone called 911, and the police responded. Sergeant Joseph Paul Hoydis, Jr. testified that he arrived at defendant's apartment at approximately 6:15 p.m. and found the victim lying face-down on the living room floor with a pool of blood around his head. Police officers discovered what they believed to be drugs and drug paraphernalia in the kitchen of defendant's apartment. A photograph of what appeared to be drugs and paraphernalia on a table was introduced into evidence at trial without comment by the prosecution.

As part of their investigation, police obtained security video footage from defendant's apartment complex. The video, which was admitted into evidence, showed that defendant and two of the visitors, A.G. and A.R., left the apartment at approximately 6 p.m. on November 14, 2014.

Defendant elected not to testify at trial, but the State played redacted portions of a recorded statement defendant gave to the police on November 15, 2014. Before defendant's statement was played for the jury, the court conducted a series of hearings, including an evidentiary hearing concerning the admissibility of the statement and the need for redactions to the statement.

A-4236-17T4

The trial court found that defendant had been given his Miranda[2] warnings and that he had knowingly and voluntarily waived those rights. Defendant, thereafter, answered certain questions, but later invoked his right to counsel and the questioning ended. Thus, the trial court ruled that defendant's statements before the invocation of his right to counsel could be played at trial, subject to specific objections to particular questions that could be made at trial.

Thereafter, counsel and the court conferred and, at defendant's request, the court redacted portions of the statement concerning defendant's mental health. Defendant also objected to the portions of the statement that discussed the drugs and paraphernalia found at defendant's apartment. The court noted that redacting all references to drugs would be difficult and suggested that the drugs were "intrinsic to what happened that day." The State argued that the drugs might be relevant to a motive for the murder and could also be relevant to the credibility of the witnesses who were present at the apartment.

The court stated that it would review defendant's statement and try to redact as many of the references to drugs and paraphernalia as possible. The court also stated that it would give the jury a limiting instruction concerning any references to the drugs and drug paraphernalia. Subsequently, the court

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

4

reviewed and redacted certain portions of the statements and provided the redacted statements to counsel. Defense counsel acknowledged that she had reviewed the redactions and that the redactions were consistent with the trial court's prior ruling.

At trial, the State played a video recording of defendant's redacted statement. The jury was also provided with a redacted transcript but instructed that the transcript was only an aid and that the jury should be guided by what it heard in the video recording.

In the portion of the statement played for the jury, defendant denied committing the murder and stated that he left his apartment before the murder occurred. Several times during the interview, detectives asked defendant about drugs and paraphernalia that were found on the kitchen table in defendant's apartment. Defendant denied knowing anything about the drugs or to whom the drugs belonged. Detectives also asked defendant whether he or any of the other people in his apartment were affiliated with a gang. Defendant denied any gang affiliation.

After the jury had seen and heard defendant's redacted statement, the court conferred with counsel regarding the references to drugs and gang affiliation. The court agreed to give the jury a limiting instruction concerning the drugs and

drug paraphernalia. Defense counsel and the prosecutor agreed that it would be better not to call further attention to the reference to gangs and they suggested that no instruction concerning gangs should be given to the jury. The trial court agreed with that suggestion.

The trial court then instructed the jury that defendant was not charged with any drug offense, it was not to consider the references to drugs as an indication that defendant had a propensity to commit crimes, and it was not to consider the drugs in any way in determining if defendant committed the murder. The jury was also instructed that it was not being asked to determine if there were drugs present in the apartment or to whom the drugs belonged.

After hearing all of the testimony and considering the evidence, the jury found defendant guilty of murder and possession of a weapon for an unlawful purpose. As noted earlier, the weapon conviction was merged with the murder conviction, and defendant was sentenced to sixty years in prison subject to NERA.

## II.

On appeal, defendant challenges his conviction and sentence. He presents two arguments for our consideration, which he articulates as follows:

> POINT I – IT WAS ERROR TO ADMIT THE
> IRRELEVANT AND PREJUDICIAL DISCUSSIONS

IN THE INTERROGATION ABOUT DRUGS AND GANGS, AND THE INSTRUCTION WAS INEFFECTIVE IN LIMITING THE JURY'S CONSIDERATION OF THE DRUGS AND SAID NOTHING ABOUT GANGS.

> A.    The drug evidence was inadmissible because it was irrelevant to the charged homicide, constituted prejudicial other-crime evidence that had no bearing on Sanchez's motive for the homicide, and was not intrinsic to the homicide.

> B.    The gang references were inadmissible because they were irrelevant to the charged homicide, constituted prejudicial other-crime evidence that had no bearing on Sanchez's motive for the homicide, and were not intrinsic to the homicide.

> C.    The jury instruction failed to limit the prejudice caused by the erroneous admission of the evidence tying Sanchez to drugs and gangs.

POINT II – THE SENTENCE OF 60 YEARS, 51 YEARS WITHOUT PAROLE, IMPOSED ON THIS 29-YEAR-OLD DEFENDANT FOR HIS ONLY INDICTABLE CONVICTION IS UNSUPPORTED AND EXCESSIVE.

Having considered defendant's arguments in light of the evidence at trial, we discern no reversible error.  We will first analyze defendant's arguments concerning the references to drugs and gangs and then analyze his sentence.

A.  Defendant's Statement

"A trial court's ruling on the admissibility of evidence is reviewed on appeal for abuse of discretion." State v. Rose, 206 N.J. 141, 157 (2011).  Unless a trial court commits a "clear error of judgment" we will not reverse based on such an evidentiary ruling.  Id. at 158 (quoting State v. Barden, 195 N.J. 375, 391 (2008)).

There is no dispute that portions of defendant's statements to the police were admissible.  Defendant voluntarily and knowingly waived his Miranda rights and initially agreed to answer questions by the police.  When he invoked his right to counsel, the questioning ended.  The issues raised by defendant, therefore, do not go to the admissibility of the entire statement.  Instead, the issue is whether all references to drugs and gangs in defendant's statement should have been redacted.

We start by analyzing the references to the drugs.  Defendant argues that evidence concerning the alleged drugs found at the scene of the crime was irrelevant to the crimes charged, constituted prejudicial other-crime evidence, and was not intrinsic to the charged crimes. Defendant also argues that the jury instruction was insufficient. The State responds that defendant ultimately failed to object to the admission of the references to drugs, the references did not

constitute a manifest denial of justice, and even if the references should have been excluded, their inclusion was invited error.

Counsel and the trial court addressed the references to drugs over a series of pretrial motions and conferences during the trial. Defense counsel initially argued that all references to drugs should be redacted. The trial court observed that redacting all references would be difficult. Ultimately, the trial court correctly ruled that the drugs and drug paraphernalia were not relevant to the murder charge. The trial court then conducted a review of defendant's statement, made redactions, and showed those redactions to counsel. At that point, the defense did not request further redactions. Nevertheless, several references to drugs were not redacted from the portion of defendant's recorded statement that was played for the jury.

There should have been no reference to drugs or drug paraphernalia. The drugs were not relevant to the charges of murder or possession of a weapon. Moreover, defendant was not charged with a drug offense.

The drugs were also not intrinsic to the murder or weapon charges. There are "two narrow categories" of intrinsic evidence. Rose, 206 N.J. at 180 (quoting United States v. Green, 617 F.3d 233, 248 (3rd Cir. 2010)). "First, evidence is intrinsic if it 'directly proves' the charged offense." Ibid. (quoting

9

Green, 617 F.3d at 248). "Second, 'uncharged acts performed contemporaneously with the charged crime may be termed intrinsic if they facilitate the commission of the charged crime.'" Ibid. (quoting Green, 617 F.3d at 249); see also State v. Santamaria, 236 N.J. 390, 409-10 (2019) (holding that evidence of other crimes or wrongs is not admissible for a propensity inference). Evidence must be intrinsic to a charged crime; it cannot be intrinsic to a crime scene.

Thus, the issue is whether the references to drugs and drug paraphernalia that the jury did hear constitute reversible error. We do not deem the lack of a request for further redactions by defense counsel as a failure to object or invited error. Accordingly, we review this issue to determine if the error was "clearly capable of producing an unjust result." R. 2:10-2.

Rule 2:10-2 "requires that there be 'some degree of possibility that [the error] led to an unjust result.'" State v. R.B., 183 N.J. 308, 330 (2005) (alteration in original) (quoting State v. Bankston, 63 N.J. 263, 273 (1973)). Our Supreme Court has explained that to warrant reversal, the error must be "sufficient to raise a reasonable doubt as to whether [it] led the jury to a verdict it otherwise might not have reached." State v. Scott, 229 N.J. 469, 484 (2017) (alteration in original) (quoting Bankston, 63 N.J. at 273). Moreover, the error "must be

evaluated 'in light of the overall strength of the State's case.'" State v. Prall, 231 N.J. 567, 588 (2018) (quoting State v. Sanchez-Medina, 231 N.J. 452, 468 (2018)).

We hold that the references to drugs and drug paraphernalia were harmless error for two related reasons. First, the other evidence against defendant was strong. That evidence included testimony from two witnesses who were present at the time of the murder and one of the witnesses was sitting next to the victim when defendant shot the victim in the back of his head. Moreover, the references to drugs in the apartment were not highly prejudicial to defendant. Defendant denied any knowledge of or involvement with the drugs. Importantly, the State never argued that defendant was responsible for the drugs.

Second, and more importantly, the trial court gave a curative instruction concerning the drugs. The jury was instructed that it was not to consider the drugs in determining whether defendant did or did not commit the murder. The jury was also instructed that it was not to consider the drugs as an indication that defendant had a propensity to commit crimes. In addition, the jury was told that defendant was not charged with any drug-related crime and it was not being asked to determine if there were drugs in the apartment or who possessed or controlled those drugs.

We also hold that the reference to gang affiliation was harmless error. In contrast to the references to drugs, neither counsel nor the trial court focused on the questions concerning gang affiliation until after defendant's statement had been played for the jury. When the issue was raised, defense counsel and the prosecutor agreed that the questioning was limited and that it would be better not to draw further attention to the issue by giving a limiting instruction. As previously noted, the trial court agreed with that position and did not give the jury a limiting instruction concerning the reference to gang affiliation.

We discern no reversible error in that decision. When viewed in full context, the reference to gang affiliation was very limited. Moreover, defendant denied any affiliation in his recorded statement. The State also did not present any evidence or arguments that defendant committed the crimes because he was affiliated with a gang. Like our ruling with regard to the drugs, this ruling is based on the strong, independent evidence that defendant committed the murder with a gun.

B.     The Sentence

We review sentencing decisions under an abuse of discretion standard. State v. Bolvito, 217 N.J. 221, 228 (2014) (quoting State v. Whitaker, 79 N.J. 503, 512 (1979)). We will affirm a trial court's sentence unless "(1) the

sentencing guidelines were violated; (2) the finding of aggravating and mitigating factors were not 'based upon competent and credible evidence in the record;' or (3) 'the application of the guidelines to the facts' of the case 'shock[s] the judicial conscience.'" Ibid. (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

Defendant contends that his sixty-year sentence, subject to NERA, was manifestly excessive. He also contends that the court should have applied mitigating factor four – that there were substantial grounds tending to excuse or justify his conduct, N.J.S.A. 2C:44-1(b)(4). He asked for mitigating factor four because he had been diagnosed with paranoid schizophrenia.

The sentencing judge assessed the aggravating factors and found aggravating factors three – the risk that defendant will commit another offense, N.J.S.A. 2C:44-1(a)(3) – and nine – the need for deterrence, N.J.S.A. 2C:44-1(a)(9). The judge also considered mitigating factors but found none. In rejecting mitigating factor four, the judge noted that there was no evidence showing that defendant's mental health condition contributed to the murder. The judge's findings concerning the aggravating factors and lack of mitigating factors were supported by evidence in the record. The judge then followed the sentencing guidelines. The sentence for first-degree murder ranges from thirty

years to life, and NERA prescribes the period of parole ineligibility. N.J.S.A. 2C: 11-3(b); N.J.S.A. 2C:43-7.2. The sentence, moreover, does not shock our judicial conscience.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION