**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4812-14T2
        A-5222-14T2[1]

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ELNARDO CHANDLER,

    Defendant-Appellant.

_____

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

RICK HAZELWOOD, a/k/a RICKY
HAZLEWOOD,

    Defendant-Appellant.

_____

        Submitted September 26, 2017 — Decided December 1, 2017

        Before Judges Fasciale, Sumners and Moynihan.

        On appeal from Superior Court of New Jersey,
        Law Division, Hudson County, Indictment No.
        13-09-1685.

_____

[1] These are back-to-back appeals consolidated for the purpose of
this opinion.

Joseph E. Krakora, Public Defender, attorney for appellant Elnardo Chandler (Daniel V. Gautieri, Assistant Deputy Public Defender, of counsel and on the briefs; Sophie Kaiser, Attorney Assistant, on the brief).

Joseph E. Krakora, Public Defender, attorney for appellant Rick Hazelwood (David A. Gies, Designated Counsel, on the brief).

Christopher S. Porrino, Attorney General, attorney for respondent (Jennifer E. Kmieciak, Deputy Attorney General, of counsel and on the brief).

Appellant Rick Hazelwood filed a pro se supplemental brief.

PER CURIAM

Elnardo Chandler appeals from his conviction for second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b). Rick Hazelwood appeals from his convictions for second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); and second-degree certain person not to have weapons, N.J.S.A. 2C:39-7(b). We reverse and remand for a new trial.

Jersey City police received a 9-1-1 call at 2:19 a.m. After providing an address and phone number, the 9-1-1 caller — self-identified as Mike — and the dispatcher conversed:

> [Mike]: I am just calling cause I see some guys outside they look like they got guns and they are standing in front of some people house[.]
> [9-1-1]: Did you see guns?
> [M]: Yeah[.]

> [9-1-1]: You saw, okay give me a description of the person who you[] saw holding the gun.
>
> [M]: I just see they got on all black that's why I am calling now so you could get somebody over there.
>
> [9-1-1]: Okay is he[,] they black, white or Hispanic?
>
> [M]: They look black.
>
> [9-1-1]: You see a black male wearing all black is holding a gun?
>
> [M]: Yeah[.]
>
> [9-1-1]: Where is he holding the gun?
>
> [M]: I just saw it across the street; I am not getting back in the window, That's why I called you[.]

Officer Joseph Cossolini responded to a dispatch that informed of a black male, dressed in all black, with a gun outside of 230 Linden Avenue, and saw two men — later identified as the defendants, Chandler and Hazelwood — near 233 Linden Avenue. When officers in a radio car drove past where the men were standing, Cossolini lost sight of them after they disappeared behind a van parked on the street. The men reappeared, and both walked a short distance down Linden Avenue before they were stopped by the police. Police found the gun with which defendants were charged with on the tire of the van behind which defendants disappeared.

Defendants were charged with second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (Count One); second-degree possession of a community gun, N.J.S.A. 2C:39-4(a)(2) (Count Two); and first-degree gang criminality, N.J.S.A. 2C:33-

29(a) (Count Three). Hazelwood was also charged with second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b) (Count Four).

The jury found both defendants guilty of second-degree unlawful possession of a weapon. Hazelwood was also found guilty of second-degree certain persons not to have weapons.[2] Chandler was sentenced to a term of fourteen years with a seven-year period of parole ineligibility. Hazelwood was sentenced to twenty years with ten years of parole ineligibility on the second-degree certain persons offense, concurrent to ten years with five years of parole ineligibility on the second-degree unlawful possession of a weapon offense.

On appeal, Chandler argues:

POINT I

THE COURT'S FAILURE TO GIVE AN INSTRUCTION ON "MERE PRESENCE" AS AN ESSENTIAL PART OF THE DEFINITION OF CONSTRUCTIVE POSSESSION DENIED THE DEFENDANT OF HIS RIGHT TO A FAIR TRIAL. (Partially Raised Below).

A. The Court Committed Prejudicial Error By Failing to Give, Sua Sponte, A Mere Presence Instruction And By Denying Defendant's Post-Trial Motions On This Point.

B. Defense Counsel Was Ineffective In Failing To Request A Mere-Presence Instruction At The Charge Conference.

---

[2] Prior to trial, the State dismissed the charges of possession of a community gun and gang criminality.

A-4812-14T2

POINT II

BECAUSE THE DEFENDANT NEVER CHALLENGED THE PROPRIETY OF THE POLICE PROCEEDING TO THE CRIME SCENE, THE STATE VIOLATED THE PRINCIPLES OF BANKSTON WHEN IT INTRODUCED A 911 CALL AND INFORMATION PROVIDED BY DISPATCH TO THE RESPONDING OFFICER INTO EVIDENCE. (Partially Raised Below).

   A.   The Court Committed Prejudicial Error By Admitting The 911 Call, Even For A Limited Purpose.

   B.   The Court Committed Prejudicial Error by Allowing Hearsay Testimony That Violated Defendant's Confrontation Rights.

POINT III

DEFENDANT'S SENTENCE IS EXCESSIVE AND MUST BE VACATED BECAUSE THE COURT IMPOSED AN ILLEGAL EXTENDED TERM, FAILED TO CREDIT AND WEIGH AGGRAVATING AND MITIGATING FACTORS, AND MISUNDERSTOOD WHICH VERSION OF THE GRAVES ACT APPLIED IN IMPOSING A PAROLE INELIGIBILITY PERIOD. (Partially Raised Below).

Hazelwood argues:

POINT [I]

DETECTIVE COSSOLINI'S HUNCH THAT THE DEFENDANT DISCARDED A WEAPON WHEN THE POLICE OFFICER LOST SIGHT OF HIM BEHIND A VAN FOR A FEW SECONDS DID NOT JUSTIFY THE DETENTION AND SUBSEQUENT SEARCH OF THE VAN WHERE, AFTER THE INVESTIGATORY STOP, THE ENCOUNTER BETWEEN THE DEFENDANT AND POLICE DID NOT ESCALATE AND PROBABLE CAUSE DID NOT ARISE.

POINT [II]

REFERENCE TO A 911 CALL WHICH WAS NOT RELIED ON BY DETECTIVE COSSOLINI TO STOP BOTH MEN

UNFAIRLY DIVERTED THE JURORS' ATTENTION FROM THE POLICE OFFICER'S JUSTIFICATION FOR INITIALLY DETAINING THEM.

POINT [III]

THE VERDICT AS TO THE POSSESSORY WEAPONS OFFENSE SHOULD BE SET ASIDE WHERE THE EVIDENCE WAS INSUFFICIENT TO ESTABLISH BEYOND A REASONABLE DOUBT THAT THE DEFENDANT CONSTRUCTIVELY POSSESSED THE HANDGUN.

POINT [IV]

THE TRIAL COURT'S FAILURE TO INSTRUCT THE JURY THAT THE DEFENDANT'S MERE PRESENCE AT OR NEAR THE SCENE IS PLAIN ERROR. (NOT RAISED BELOW).

POINT [V]

WHEN CONSIDERED IN CONNECTION WITH THE SENTENCE IMPOSED ON THE CO-DEFENDANT, THE DEFENDANT'S SENTENCE IS EXCESSIVE.

I.

Both defendants argue the admission of the 9-1-1 call was error. Hazelwood contends the 9-1-1 call was irrelevant because Cossolini heard not the call, but rather truncated information from the caller, relayed by the dispatcher. He also argues that the "reference" to the 9-1-1 call "unfairly diverted the jurors' attention from the information within the police officers' knowledge at the time, especially for the limited purpose as to why they were investigating the alleged crime." Chandler asserts the admission of the 9-1-1 call violated the principles of State v. Bankston, 63 N.J. 263 (1973), and his Confrontation Clause

6

rights. We agree the admission of the 9-1-1 call violated the tenets of <u>Bankston</u> and its progeny, and reverse.

The State moved in limine to admit the 9-1-1 call at trial.[3] In a pretrial ruling, the judge initially admitted the call as an excited utterance, <u>N.J.R.E.</u> 803(c)(2), and a present sense impression, <u>N.J.R.E.</u> 803(c)(1). Just prior to opening statements, however, the judge notified the parties that before the presentation of the 9-1-1 call, he would issue a limiting instruction to the jury, in line with the requirements of <u>Bankston</u>. The record reflects the judge noted the State's objection to the limiting instruction, and rejected the State's argument that the recording of the call was offered for the truth of the matter asserted; he ruled the recording was "not going in for that." The State asked the court to reconsider; the judge denied the request in a written opinion. He also orally clarified that he had changed his mind from his original ruling and was admitting the recording for the limited purpose of "explain[ing] why the police were there and what they did." The entire 9-1-1 call was played before the jury, without objection from either defendant.

---

[3] We were not provided a copy of the motion. The trial judge did not hold a hearing on the motion; counsel for both defendants were allowed an opportunity to respond to the State's motion and agreed to accept the court's decision without oral argument. We were not provided with either defendant's response to the State's motion.

A-4812-14T2

"[A] trial court's evidentiary rulings are 'entitled to deference absent a showing of an abuse of discretion, i.e., there has been a clear error of judgment.'" State v. Brown, 170 N.J. 138, 147 (2001) (quoting State v. Marrero, 148 N.J. 469, 484 (1997)). "Under that standard, an appellate court should not substitute its own judgment for that of the trial court, unless the trial court's ruling was so wide of the mark that a manifest denial of justice resulted." Ibid. (quoting Marrero, supra, 148 N.J. at 484).

In Bankston, a detective testified that "before defendant was arrested[,] the officers had been talking to an informer[,] and that based on information received," Bankston, supra, 63 N.J. at 266, they proceeded to a tavern and located defendant, "the person [they] were looking for," and found him in possession of drugs, id. at 266-67. The Court ruled a police officer does not violate the hearsay rule by testifying he took certain actions during an investigation based on "information received," but "when the officer becomes more specific by repeating what some other person told him concerning a crime by the accused[,] the testimony violates the hearsay rule[,]" id. at 268, and the defendant's right of confrontation under the Sixth Amendment, id. at 269. The Court, in State v. Branch, 182 N.J. 338, 352 (2005), reiterated that an officer could reference "information received" to explain

his actions, "but only if necessary to rebut a suggestion that [he] acted arbitrarily and only if the use of that phrase does not create an inference that the defendant has been implicated in a crime by some unknown person."

Chandler argues because he "never challenged the propriety of the police proceeding to the crime scene, the State violated the principles of Bankston." The use of explanatory testimony by police to justify their actions has been circumscribed. See Branch, supra, 182 N.J. at 352 (finding an exception only where "the defendant . . . opens the door by flagrantly and falsely suggesting that a police officer acted arbitrarily or with ill motive"); see also State v. Baker, 228 N.J. Super. 135, 139-40 (App. Div. 1988) (finding there is "seldom any justification" to admit evidence under the Bankston exception absent a claim by the defendant "that the police acted arbitrarily in approaching him").

The trial judge did not find either defendant suggested that any officer acted arbitrarily in approaching the defendants on the street. Although Hazelwood's counsel cross-examined Cossolini about his reasons for stopping the defendants and telling them to put their hands up, neither he nor Chandler's counsel contended or implied any officer acted arbitrarily. Further, the 9-1-1 call was admitted and played prior to that questioning.

Even if a brief reference was warranted under Bankston because

of defense counsel's questions, the quantum of evidence presented to the jury went well beyond that permitted to explain that the police acted "on information and belief" in order to rebut a suggestion of police arbitrariness. Furthermore, it not only created an inference that a non-testifying witness implicated the defendants, it was direct evidence of their guilt. The prosecutor recounted the detailed information contained in the 9-1-1 call in his summation:

> So it's very early in the morning, and this person, who identifies himself as Mike, says -- and provides a phone number indicates that across the street, there are individuals that were in black with guns, and he describes them as black males. And he was not willing to look outside the window because they were -- they were standing there. So you know that people were standing across the street from the location of 230 Linden Avenue. And you know this individual had seen them, according to him, with actual possession of guns.

"When evidence is admitted that contravenes not only the hearsay rule but also a constitutional right, an appellate court must determine whether the error impacted the verdict." State v. Weaver, 219 N.J. 131, 154 (2014). Since neither defendant objected, we consider whether the admission of the 9-1-1 recording impacted the verdict under the plain error standard. We will not reverse unless the testimony was "clearly capable of producing an unjust result." R. 2:10-2; see Branch, supra, 182 N.J. at 353

(applying the plain error standard where there was no objection to testimony that violated defendant's right to confrontation). More specifically, we will reverse only where there is a possibility of an unjust result "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." State v. Macon, 57 N.J. 325, 336 (1971).

No trial witness saw either defendant in possession of a handgun; and no fingerprint or DNA evidence linked defendants to the gun that was found. The only potential evidence that placed a gun in defendants' hands was the observations made by the non-testifying 9-1-1 caller. Absent those observations, the State's only incriminatory evidence was limited to Cossolini's testimony that, when he responded to the scene, he saw the defendants crouching near the vehicle's wheel on which the gun was found.

The practical impact is that the State obtained the benefit of the 9-1-1 caller's testimony without calling him as a witness. The admission of that evidence — compounded by the prosecutor's use of that evidence in summation — in a case where there was scant proof of possession, was plain error. The admission of the 9-1-1 recording, and the prosecutor's reference in summation to the details contained therein, require reversal notwithstanding the judge's limiting instruction.

Chandler also argues that the admission of the 9-1-1 recording

violated his Confrontation Clause rights. No such objection was raised at trial. "[G]enerally, a defendant must attempt to exercise his confrontation right and object when necessary, if he wishes later to claim that he was denied that right." State v. Williams, 219 N.J. 89, 93 (2014), cert. denied, ___ U.S. ___, 135 S. Ct. 1537, 191 L. Ed. 2d 565 (2015). We conclude, however, the failure to object was "so patently unreasonable and so clearly erroneous that no rational counsel acting within the wide range of professional norms would pursue such a course." Id. at 99. The admission of the 9-1-1 recording, as stated, was clearly capable of unfairly impacting the jury's finding. As such, we conclude there was no confrontation right waiver. Playing the recording of the 9-1-1 caller's observations precluded defendants' right to confront the caller at trial, requiring reversal.

## II.

Although we are reversing these convictions, we address issues that may arise after remand to the trial court.

Hazelwood contends the trial judge committed plain error by failing to instruct the jury on "mere presence." Chandler, relying on State v. Randolph, 441 N.J. Super. 533 (App. Div. 2015), aff'd, 228 N.J. 566 (2017), also argues the judge erred by failing to sua sponte add the "mere presence" charge to the instruction on constructive possession; he also claims his trial counsel was

ineffective for failing to request the charge until after the trial was completed.

We apply the plain error standard because no request for the charge was made at trial. State v. Burns, 192 N.J. 312, 341 (2007) (citing R. 2:10-2; State v. Torres, 183 N.J. 554, 564 (2005)). Reversal is warranted "on the basis of unchallenged error" if that error "was 'clearly capable of producing an unjust result.'" Ibid. (quoting R. 2:10-2). "In the context of a jury charge, plain error requires demonstration of '[l]egal impropriety in the charge prejudicially affecting the substantial rights of the defendant sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result.'" Ibid. (alteration in the original) (quoting State v. Jordan, 147 N.J. 409, 422 (1997)). "If the defendant does not object to the charge at the time it is given, there is a presumption that the charge was not error and was unlikely to prejudice the defendant's case." State v. Singelton, 211 N.J. 157, 182 (2012) (citing Macon, supra, 57 N.J. 325, 333-34 (1971)). An alleged unchallenged error in the jury charge is analyzed "in light of 'the totality of the entire charge, not in isolation.'" Burns, supra, 192 N.J. at 341 (quoting State v. Chapland, 187 N.J. 275, 289 (2006)).

There is no model charge on "mere presence"; it is a part of the accomplice liability charge, and is sometimes excised and used alone, after any reference to "accomplice" is deleted. The instruction reads:

> Mere presence at or near the scene does not make one a participant in the crime, nor does the failure of a spectator to interfere make him/her a participant in the crime. It is, however, a circumstance to be considered with the other evidence in determining whether he/she was present as an accomplice. Presence is not in itself conclusive evidence of that fact. Whether presence has any probative value depends upon the total circumstances. To constitute guilt there must exist a community of purpose and actual participation in the crime committed.
>
> While mere presence at the scene of the perpetration of a crime does not render a person a participant in it, proof that one is present at the scene of the commission of the crime, without disapproving or opposing it, is evidence from which, in connection with other circumstances, it is possible for the jury to infer that he/she assented thereto, lent to it his/her countenance and approval and was thereby aiding the same. It depends upon the totality of the circumstances as those circumstances appear from the evidence.
>
> [Model Jury Charge (Criminal), "Liability for Another's Conduct" (1995).]

The instruction was not warranted in this case. Each defendant contended at trial that he did not possess the gun. Neither defendant was seen by a testifying witness with the gun. No forensic evidence linked either defendant to the gun. The

14

standard possession charge, setting forth the elements of possession, particularly constructive possession,[4] provided sufficient instruction to the jury to allow defendants to demonstrate the State's failure of proof.

The mere presence charge is more apt when a crime has been committed and defendant contends he merely watched the criminal act. The first paragraph of the mere presence charge has the capacity to confuse a jury because "spectators" are rare in most possession cases. The second paragraph of the charge could,

---

[4] The portion of the charge relating to constructive possession provides:

> Possession may be constructive instead of actual. As I just stated, a person who, with knowledge of its character, knowingly has direct physical control over an item at a given time is in actual possession of it.
>
> Constructive possession means possession in which the possessor does not physically have the item on his or her person but is aware that the item is present and is able to and has the intention to exercise control over it. So, someone who has knowledge of the character of an item and knowingly has both the power and the intention at a given time to exercise control over it, either directly or through another person or persons, is then in constructive possession of that item.
>
> [Model Jury Charge (Criminal), "Possession" (2014).]

likewise, confuse a jury in a possession case because a person can't readily disapprove or oppose a possessory offense as he can a crime such as robbery — a crime that requires affirmative action. Failing to give the charge sua sponte was not error, and if it were, it was not capable of producing an unjust result.

Chandler's reliance on Randolph is misplaced. That case is distinguishable because there, unlike here, the defendant in Randolph requested the mere presence charge during the charge conference, Randolph, supra, 441 N.J. Super. at 557; further the trial judge did not properly respond to the jury's question regarding the relationship of the defendant to the location where the item he was alleged to possess was located, id. at 558-61. We determined although "an accurate and complete charge on possession and constructive possession" ordinarily leaves "no room to doubt that 'mere presence' [is] insufficient to bring about a finding of the necessary elements of possession[,]" the facts in Randolph presented a "limited circumstance[]" that required the jury charge to include an instruction on mere presence. Id. at 559 (quoting State v. Montesano, 298 N.J. Super. 597, 615 (App. Div.), certif. denied, 150 N.J. 27 (1997)). We concluded that

> given the paucity of proofs connecting
> defendant to the CDS found in the apartment,
> and the jury question suggesting that jurors
> had concerns about the issue, it was incumbent
> upon the judge to clearly apprise the jury on

16

> the law pertaining to defendant's 'mere presence' in the building. The failure to do so invited the jury to speculate about a legal issue that required a clear instruction by the judge.
>
> [Ibid.]

We cannot conclude the failure to give the charge denied defendants a fair trial. The jury was told the State had to prove beyond a reasonable doubt that each defendant, actually or constructively, knowingly possessed — solely or jointly — the handgun, and was given specific instructions about those concepts as per the Model Jury Charge on possession. Even in the absence of the mere presence instruction, the jury knew in order to convict a defendant, it would have to find more than his mere presence on the street that night. See State v. Randolph, 228 N.J. 566, 592 (2017) (finding "the charge, as a whole, sufficiently informed the jury — without using the words 'mere presence' — that the defendant's presence in the building, standing alone, would be insufficient to establish guilt").

We will not entertain Chandler's claim that trial counsel was ineffective on direct appeal. "Our courts have expressed a general policy against entertaining ineffective-assistance-of-counsel claims on direct appeal because such claims involve allegations and evidence that lie outside the trial record." State v. Preciose, 129 N.J. 451, 460 (1992). Courts "routinely decline to

17

entertain ineffective-assistance-of-counsel claims on direct appeal." State v. Hess, 207 N.J. 123, 145 (2011).

The trial record is not sufficiently developed to allow us to determine this issue. The resolution of Chandler's argument requires an inquiry into why counsel did not request the charge, and whether that decision was the result of a trial strategy. Strickland v. Washington, 466 U.S. 668, 689, 104 S. Ct. 2052, 2065, 80 L. Ed. 2d 674, 695 (1984). Accordingly, this claim would be better raised in a petition for post-conviction relief.

We deem defendants' other arguments regarding the 9-1-1 call to be without sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(2). Hazelwood's argument that "reference to a [9-1-1] call which was not relied on by Detective Cossolini to stop both men unfairly diverted the jurors' attention from the police officer's justification for initially detaining them," relates to his trial court motion to suppress his arrest, an issue not raised here.

Likewise, Hazelwood's argument that police lacked a reasonable and articulable suspicion to effectuate a stop of the defendants, which he contends led to the unconstitutional search and seizure of the handgun from the wheel well of the vehicle, is meritless. R. 2:11-3(e)(2). Neither Hazelwood nor Chandler filed a motion to suppress evidence. Chandler's counsel clarified on

the record that his motion to suppress involved his arrest, not the search or seizure; Hazelwood joined in that motion. Under similar circumstances our Supreme Court "conclude[d] that it would be unfair, and contrary to our established rules" to decide a suppression issue not raised at the trial level, and that, "with few exceptions . . . appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available." State v. Witt, 223 N.J. 409, 419 (2015) (quoting State v. Robinson, 200 N.J. 1, 20 (2009)). Defendants' failure to raise this issue before the trial court deprived the State of the chance to establish a full factual record in support of the warrantless seizure of the handgun, and deprived the court of the opportunity to find facts and rule on this issue. As such, we deem this issue waived and decline to address it.

We also reject Hazelwood's argument that the unlawful stop of the defendants led to the seizure of the handgun. The gun was seized when Cossolini went to the van — parked on a public street — behind which he lost sight of the defendants. The gun was on the wheel of the parked van, a location in which the defendants had no reasonable expectation of privacy. There is no link between the stop that Hazelwood claims was unlawful and the discovery and seizure of the gun. Further, the record discloses that Cossolini,

when responding to the 9-1-1 call, saw two men in the described area, one of whom matched the description given by the 9-1-1 caller. Cossolini's observations, combined with the surreptitious movements of the men disappearing behind the parked van when a radio car drove by, justified the stop.

In light of our reversal, we need not address Hazelwood's contention that the evidence was insufficient to establish his constructive possession of the handgun. The evidence used to determine defendant's motion for judgment notwithstanding the verdict, Rule 3:18-2, and motion for a new trial, Rule 3:20-1, in light of our ruling that the 9-1-1 recording was improperly introduced, will be different from that considered by the trial judge. As such, and in light of our remand, we will not decide that issue.

Although defendants' sentences are vacated, we find no merit in their arguments that their respective sentences were excessive, nor in Chandler's contention that his extended term sentence was illegal. R. 2:11-3(e)(2). We briefly add, as to Chandler, the judge did not specifically set forth his reasons for imposing an extended term sentence, and may have added confusion to the record by failing to specify the sections of N.J.S.A. 2C:43-7 and N.J.S.A. 2C:44-3 to which he referred in imposing an extended term; notwithstanding his mention of defendant's two prior gun

convictions, however, it is clear the extended term was based on the judge's finding that Chandler was a persistent offender. The State moved to sentence Chandler to an extended term only as a persistent offender. Chandler has no sustainable basis to contend that the extended term was imposed under the Graves Act. Hazelwood did not challenge the extended term sentence imposed on his certain persons conviction. In his pro se submission, he seems to challenge the applicability of the Graves Act and his sentencing as a repeat Graves offender. His extended term sentence, however, was clearly based on the judge's conclusion that he was a persistent offender — not a repeat Graves offender.

Because the judge, before imposing sentence, considered and weighed the applicable aggravating and mitigating factors as to each defendant — which were supported by competent, credible evidence in the record — and because the sentences do not "shock the judicial conscience," we would have applied our deferential standard of review and affirmed the base term sentences but for our decision to reverse their convictions. State v. O'Donnell, 117 N.J. 210, 215-16 (1989). The same holds true for the challenged period of parole ineligibility imposed on Chandler. State v. Martelli, 201 N.J. Super. 378, 382 (App. Div. 1985).

Reversed and remanded to the trial court for further proceedings consistent with this opinion. We do not retain

21

jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION