**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5586-17

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MARTIN DELVALLE a/k/a
LOUIS CAMACHO,
WILBERTO R. MARTINEZ,
MARTIN RODRIGUEZ, ERIC
HEDGEPATH, ERIC C.
HEDGEPATH, MARTIN
DELVALLE-RODRIGUEZ,
MARTIN DELVALLI,
MARTIN KALIAS, ROBERTO
MARTINEZ, and MARTIN
RODRIQUEZ,

    Defendant-Appellant.

_____

Submitted November 15, 2021 – Decided March 3, 2022

Before Judges Messano and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Indictment No. 15-09-0122.

Joseph E. Krakora, Public Defender, attorney for appellant (Ruth E. Hunter, Designated Counsel, on the brief).

Andrew J. Bruck, Acting Attorney General, attorney for respondent (Catlin A. Davis, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Following a bifurcated jury trial, defendant Martin Del Valle was convicted of weapons and drug offenses for the undercover sales of firearms to a police informant and the subsequent seizure of oxycodone pills from defendant's residence. The same jury thereafter convicted defendant of certain persons not to have weapons and related firearm offenses. After denying the State's motion for a discretionary extended term, the trial court ordered appropriate mergers and sentenced defendant to an aggregate prison term of thirty years with a fifteen-year parole disqualifier.

Defendant now appeals, arguing:

POINT I

DEFENDANT DID NOT VOLUNTARILY WAIVE HIS MIRANDA[1] RIGHTS BECAUSE THE POLICE DID NOT INFORM HIM, PRIOR TO READING HIM HIS RIGHTS, THAT HE WAS ALSO FACING WEAPONS CHARGES. IN ADDITION, THE TRIAL COURT'S FAILURE TO GIVE THE "KOCIOLEK

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

2

A-5586-17

CHARGE" ABOUT DEFENDANT'S UNRECORDED AND INCRIMINATING STATEMENTS DEPRIVED DEFENDANT OF A FAIR TRIAL. SEE STATE V. KOCIOLEK, 23 N.J. 400, 421 (1957).
[(Partially raised below).]

POINT II

THE DETECTIVES' TESTIMONY AND THE PROSECUTOR'S ARGUMENT THAT DEFENDANT WAS THE "TARGET" OF A POLICE INVESTIGATION VIOLATED STATE V. BANKSTON, 63 N.J. 263 (1973), AND THE DETECTIVES' TESTIMONY CONCERNING WHAT THE CONFIDENTIAL INFORMANT TOLD THEM WAS INADMISSIBLE HEARSAY.
[(Partially raised below).]

POINT III

THERE MUST BE A REMAND FOR A RESENTENCING BECAUSE THE COURT IMPOSED EXCESSIVE AND DISPROPORTIONATE MAXIMUM AND CONSECUTIVE SENTENCES WITH DISCRETIONARY PAROLE DISQUALIFIERS, AND BECAUSE IT INAPPROPRIATELY APPLIED THE GRAVES ACT[2] TO INELIGIBLE OFFENSES.

We are unpersuaded by the arguments raised in points I and II; the State

concedes the court inappropriately applied the Graves Act to certain weapons

---

2  N.J.S.A. 2C:43-6(c).

offenses. We therefore affirm defendant's convictions but remand for resentencing.

I.

The charges against defendant arose from a State Police investigation commenced after a known cooperating witness, Levi Melvin, approached Detective Doug Muraglia, a member of the Crime Suppression Central Unit. Seeking to reduce his exposure on pending charges, Melvin told Muraglia defendant frequently sold guns from defendant's home in Trenton. Under the auspices of law enforcement, Melvin purchased four firearms from defendant on three separate dates between December 14, 2014 and March 21, 2015.

Police executed a search warrant at defendant's home on April 15, 2015. Around 8:30 p.m., before the search ensued, the State Police SWAT team secured the residence and removed defendant and the other occupants. Outside the home, Muraglia advised defendant of his Miranda rights; defendant agreed to speak with Muraglia. Defendant acknowledged he owned the three-story residence, lived on the first floor, and rented rooms to various tenants.

Defendant was transported to headquarters while the search was conducted. Police seized oxycodone pills in unlabeled prescription pill bottles from defendant's bedroom. Other oxycodone pills in bottles labeled with

4

prescriptions in the name of defendant's girlfriend, Janice Pabon, were found in the living room. Pabon lived with defendant at the time of his arrest. No firearms were seized from the residence.

Around 10:00 p.m. at the station, Detective Michael Paglione, of the Mercer County Prosecutor's Office, administered Miranda warnings to defendant in the presence of Detective Kartik Birudaraju. Defendant acknowledged his rights and signed a Miranda card.

Later during processing, defendant asked Muraglia why he was arrested and what evidence was recovered during the search of his home. Muraglia told defendant police found pills. Defendant immediately volunteered some pills were Pabon's, and he obtained the remainder illegally for purposes of distribution. Thereafter, Muraglia disclosed law enforcement had purchased firearms from defendant and asked him to provide a formal statement concerning their conversation. Defendant claimed he had chest pains; Muraglia called an ambulance. Police did not take a formal, recorded statement from defendant.

Over the course of three trial days, the State presented the testimony of Muraglia, three other law enforcement witnesses, Melvin, and Pabon. The State also moved into evidence various exhibits, including the four firearms sold to Melvin, the audio recordings of the police-monitored, consensual telephone

calls between Melvin and defendant concerning those sales, and the oxycodone pills seized from defendant's home. Defendant did not testify but called Pabon and another lay witness in his defense.

After the first trial, the jury convicted defendant of the first eight counts charged in a Mercer County indictment:[3] fourth-degree unlawful disposition of a weapon, N.J.S.A. 2C:39-9(d) (counts one through four); second-degree possession with intent to distribute a controlled dangerous substance (oxycodone), N.J.S.A. 2C:35-5(a)(1) and 2C:35-5(b)(4) (count five); third-degree possession with intent to distribute oxycodone within 1,000 feet of school property, N.J.S.A. 2C:35-7 (count six); second-degree possession with intent to distribute oxycodone within 500 feet of public property, N.J.S.A. 2C:35-7.1 (count seven); and third-degree possession of oxycodone, N.J.S.A. 2C:35-10(a)(1) (count eight). The jury then convicted defendant of the remaining counts of the same indictment: second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b)(1) (count nine); three counts of first-degree

---

[3] The charges were renumbered after the court granted the State's motion to dismiss four counts of the indictment, i.e., second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1) (three counts), and third-degree unlawful possession of a rifle, N.J.S.A. 2C:39-5(c) (one count).

6

unlawful possession of a handgun by a person previously convicted of a NERA[4] offense, N.J.S.A. 2C:39-5(b) and 2C:39-5(j) (counts ten through twelve); and first-degree unlawful possession of a rifle by a person previously convicted of a NERA offense, N.J.S.A. 2C:39-5(c) and 2C:39-5(j) (count thirteen).

At sentencing, the court merged counts six through eight with count five and sentenced defendant to a custodial term of ten years with a mandatory minimum of five years on the remaining second-degree drug offense. The court also merged count nine with count twelve, and sentenced defendant to a twenty-year prison term with a ten-year parole disqualifier on the remaining first-degree unlawful possession of a weapon offense. Defendant was sentenced to concurrent: twenty-year prison terms with ten-year mandatory minimum terms on counts ten, eleven, and thirteen; and eighteen-month prison terms with eighteen-month mandatory minimum terms of imprisonment on counts one through four. The sentences on counts one through four, ten, eleven, and thirteen, were imposed concurrently with count twelve; and the sentences on counts five and twelve were imposed consecutively with each other.

---

[4] No Early Release Act, N.J.S.A. 2C:43-7.2.

A-5586-17

II.

A.

In his first point, defendant seeks reversal of his drug convictions, arguing the trial court erroneously admitted his inculpatory statements in evidence. Prior to trial, the court conducted a <u>Miranda</u> hearing pursuant to N.J.R.E. 104(c).[5] Detectives Muraglia and Paglione testified on behalf of the State. Defendant did not testify or present any evidence.

Muraglia stated he first encountered defendant outside his residence, read defendant his <u>Miranda</u> rights "off the top of [his] head," and apprised defendant police were there to conduct a "court-authorized search." Muraglia explained the detectives do not utilize a written <u>Miranda</u> form in the field "for officer safety," but do so after a suspect is transported to the station. Defendant appeared "calm, cool, and collect[ed]," and had no questions about his rights. He agreed to answer Muraglia's questions.

On cross-examination, Muraglia acknowledged he did not re-issue <u>Miranda</u> warnings while processing defendant, but was aware defendant had

---

[5] The record on appeal does not contain an order memorializing the court's decision. As such, it is unclear from the record whether defendant moved pretrial to suppress the oral statements he made to law enforcement, or the State moved for a voluntariness determination.

signed a <u>Miranda</u> card, indicating he waived his rights in the presence of Paglione and Birudaraju. Muraglia also explained he did not immediately advise defendant about the weapons offenses, preferring to wait until defendant was processed and questioned in the interview room, where his statement would be recorded.

Paglione testified he advised defendant of his <u>Miranda</u> rights at the station. Utilizing a <u>Miranda</u> card, Paglione read each right and gave defendant the opportunity to read the card. Defendant acknowledged he understood his rights verbally and by signing the card. Paglione did not interrogate defendant or engage in any further conversation.

Defense counsel asserted defendant's inculpatory statements were not spontaneously made and Muraglia should have readministered his rights for a third time before advising defendant police recovered pills from his residence. Following argument, the trial court reserved decision and thereafter issued a cogent oral decision.

Citing the governing law, the court ruled defendant knowingly, voluntarily, and intelligently waived his <u>Miranda</u> rights and his brief post-arrest oral statements to police were made voluntarily. Deeming the unrefuted testimony of both detectives "highly credible," the court concluded "defendant

9

was twice given and waived his <u>Miranda</u> rights . . . in relatively contemporaneous time periods."  The court found Muraglia's field inquiry was "very limited."

Turning to defendant's statements about the pills during processing, the court found defendant initiated the inquiry and Muraglia answered his question. Thus, the exchange "was not done in some method designed to produce an incriminating response."  Noting Muraglia planned to take a formal statement after processing, the court found defendant "was likely not subjected to interrogation."  Alternatively, the court found the statements were made after defendant was fully advised of, and waived, his rights.

Before us, defendant asserts a different basis for suppressing the statements.[6]  Defendant now contends the waiver of his <u>Miranda</u> rights was not knowing and voluntary because police failed to advise him, before he confessed to the drug crimes, that they were charging him with weapons offenses.  We are not persuaded.

---

[6]  Because the argument was not raised before the trial court, we could choose not to address it.  <u>See</u> <u>State v. Witt</u>, 223 N.J. 409, 419 (2015) (recognizing "with few exceptions, 'our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available'" (quoting <u>State v. Robinson</u>, 200 N.J. 1, 20 (2009))). However, the record is complete and permits us to fully review the issues as now framed.

Defendant argues such a disclosure was constitutionally required to enable him to knowingly, voluntarily, and intelligently decide whether to waive his Fifth Amendment right against self-incrimination, as established in State v. A.G.D., 178 N.J. 56 (2003). He further contends the factual scenario here is similar to that in State v. Vincenty, 237 N.J. 122 (2019), decided after the trial court rendered its decision in this matter. After the briefs were filed, defendant filed a supplemental brief, pursuant to Rule 2:6-11(d), citing the majority's recent opinion in State v. Sims, 466 N.J. Super. 346 (App. Div.), certif. granted, 246 N.J. 146 (2021), to further support his belated argument. The State filed a responding supplemental submission, maintaining Muraglia did not interrogate defendant, who "volunteered his incriminating statement during processing." Alternatively, the State contends, unlike Sims, the present matter involved "two distinct sets of crimes."

In A.G.D., the Court held law enforcement's failure to inform the defendant that a criminal complaint or warrant had been filed against him prior to the interrogation, rendered the defendant's waiver of his Miranda rights involuntary. 178 N.J. at 58-59. The Court stated such information was "critically important" and "indispensable to a knowing and intelligent waiver of rights." Id. at 68. In Vincenty, the Court extended its holding in A.G.D. by

additionally requiring interrogating officers to apprise a suspect of the basis for the complaint or warrant. 237 N.J. at 126.

More recently, this court decided Sims, where the majority construed A.G.D. and Vincenty to compel suppression of the defendant's Mirandized statement where he was arrested and interrogated before charges were formally filed. Sims, 466 N.J. Super. at 367. Although the officers in Sims had not filed a formal complaint-warrant, they had arrested the defendant for attempted murder and failed to inform him why he was under arrest before questioning him. Id. at 357.

Initially, we note "the decision of one appellate panel [is not] binding upon another panel of the Appellate Division." Brundage v. Estate of Carambio, 195 N.J. 575, 593 (2008).[7] Nonetheless, the facts in Sims are distinguishable from those presented here. Unlike the defendant in Sims, police were not interrogating defendant when he made the inculpatory statements concerning the pills, as the court initially determined. Instead, defendant initiated the inquiry and volunteered information concerning ownership of the oxycodone recovered from his home.

---

[7] After granting certification in Sims, the Court issued an order staying our decision pending appeal. No. 085369 (Mar. 16, 2021).

Moreover, even if defendant's incriminating statements were erroneously admitted in evidence under <u>Sims</u>, the unchallenged error was not "clearly capable of producing an unjust result." <u>R.</u> 2:10-2; <u>see also</u> <u>State v. Ross</u>, 229 N.J. 389, 407 (2017). Defendant's guilt concerning the drug offenses did not rise and fall on his statements. In addition to the officers' testimony about their observations during execution of the search warrant, Pabon testified that the oxycodone pills belonged to defendant. The State also presented the testimony of an expert in pharmaceutical narcotics distribution, who explained, among other things, persons involved in distribution of prescription pills are likely to possess drugs in unlabeled or improperly labeled bottles. We therefore discern no basis to disturb the trial court's decision, admitting in evidence defendant's statements to law enforcement.

## B.

Defendant also challenges the trial court's failure to issue a <u>Kociolek</u> charge to the jury to assess the credibility of his oral statements made to Muraglia. Because defendant did not challenge the omission of the instruction at trial, we review for plain error. <u>State v. Wakefield</u>, 190 N.J. 397, 473 (2007) (holding that under <u>Rules</u> 1:7-2 and 2:10-2, "the failure to object to a jury instruction requires review under the plain error standard").

A Kociolek charge pertains to the reliability of an inculpatory statement made by a defendant to any witness. 23 N.J. at 421-23. A Kociolek charge need not be provided to the jury where "an alleged oral inculpatory statement was not made in response to police questioning, and there is no genuine issue regarding its contents, . . . because the only question the jury must determine is whether the defendant actually made the alleged inculpatory statement." State v. Baldwin, 296 N.J. Super. 391, 401-02 (App. Div. 1997).

The failure to give a Kociolek charge is not plain error per se. State v. Jordan, 147 N.J. 409, 428 (1997) (noting it would be "a rare case where failure to give a Kociolek charge alone is sufficient to constitute reversible error"). We have held "[w]here such a charge has not been given, its absence must be viewed within the factual context of the case and the charge as a whole to determine whether its omission was capable of producing an unjust result." State v. Crumb, 307 N.J. Super. 204, 251 (App. Div. 1997).

Here, the trial court's final instructions to the jury on defendant's oral statements to Muraglia largely tracked the applicable model instruction, commonly known as a Hampton[8]/Kociolek charge. See Model Jury Charges

---

[8] State v. Hampton, 61 N.J. 250 (1972). In Hampton, the Court held that when a defendant's confession to police is admitted in evidence at trial, the judge shall

14

(Criminal), "Statements of Defendant" (rev. June 14, 2010).  However, the court

omitted the "Kociolek portion" of the charge:

> In considering whether or not an oral statement was actually made by the defendant, and, if made, whether it is credible, you should receive, weigh and consider this evidence with caution based on the generally recognized risk of misunderstanding by the hearer, or the ability of the hearer to recall accurately the words used by the defendant.  The specific words used and the ability to remember them are important to the correct understanding of any oral communication because the presence, or absence, or change of a single word may substantially change the true meaning of even the shortest sentence.
>
> You should, therefore, receive, weigh and consider such evidence with caution.

But the court gave appropriate guidance on the jury's evaluation of

defendant's statements to Muraglia by giving the detailed instructions on

assessing the general credibility of witnesses set forth in Model Jury Charges

(Criminal), "Criminal Final Charge" (rev. May 12, 2014).  Although the trial

court should have issued a Kociolek charge in this case, the failure to do so was

not "clearly capable of producing an unjust result."  R. 2:10-2.  In view of the

---

instruct the jurors "that they should decide whether . . . the defendant's confession is true," and if they conclude "that it is not true, then they must . . . disregard it for purposes of discharging their function as fact finders."  Id. at 272.

court's clear instructions to the jury on the task of considering the credibility of all witnesses, we are unable to conclude the absence of a <u>Kociolek</u> charge constituted plain error in the context of this matter. Indeed, as previously stated, defendant's guilt was not based solely on Muraglia's testimony regarding the statements made by defendant.

III.

In his second point, defendant raises three overlapping arguments, contending their cumulative effect warrants reversal of all his convictions. Defendant argues: the detectives' testimony violated the principles enunciated in <u>Bankston</u>, by referring to defendant as the "target" of the investigation; the prosecutor's closing remarks "improperly identified defendant as a criminal"; and the State elicited inadmissible hearsay from Muraglia concerning specific information he received from "a confidential informant" that defendant was a known arms dealer. We are unpersuaded.

<u>Bankston</u> limits an officer's explanations for initiating an investigation to neutral language that does not imply the officer has inculpatory information about a defendant, which is not otherwise shared with the jury. <u>Id.</u> at 268. "When the logical implication to be drawn from the testimony leads the jury to believe that a <u>non-testifying witness</u> has given the police evidence of the

16

accused's guilt, the testimony should be disallowed as hearsay."  Id. at 271 (emphasis added).  Although in Bankston "the police officers never specifically repeated what the informer had told them, the inescapable inference from [one officer's] testimony was that . . . an unidentified informer, who was not present in court and not subjected to cross-examination, had told the officers that defendant was committing a crime."  Ibid. (emphasis added).  The Court excluded the testimony as "clearly hearsay."  Ibid.; see also State v. Medina, 242 N.J. 397, 415 (2020) (reiterating the principle that law enforcement witnesses "may not disclose incriminating information obtained from a non-testifying witness").

Here, defendant points to the officers' references to him as a target as violating Bankston because they at least suggested police had "inside" information.  The reference was first made after Muraglia generally described his background in firearms and narcotics investigation, and specifically referenced the present investigation "between December of 2014 and April of 2015."  Muraglia then explained he commenced the investigation after he was contacted by Melvin, and subsequently oversaw Melvin's controlled purchases of four firearms from defendant during that time frame.  Notably, Melvin

testified at trial to his involvement in the investigation and was "subjected to cross-examination."  Bankston, 63 N.J. at 271.

Because defendant did not object at trial, we review the issue for plain error.  R. 2:10-2.  The term, "target" as used in this case does not imply police received information from an out-of-court declarant.  Conversely, Muraglia expressly informed the jury that police received information about defendant's firearms trafficking from Melvin, who, in turn, testified to the same information at trial.  While the term, "target" may conjure a negative connotation, there was no Bankston violation here.  As such, we do not view the use of the term "target" in this case to be "clearly capable of producing an unjust result."  Ibid.

For similar reasons, we reject defendant's contentions that Muraglia's testimony about his conversations with Melvin violated the hearsay rule.  Contrary to defendant's assertion, Melvin was not a "confidential informant."  Again, Melvin was a witness at trial and available for cross-examination.  See Bankston, 63 N.J. at 271.  Thus, Melvin was not "a faceless accuser."  State v. Branch, 182 N.J. 338, 348 (2005) (cautioning that "the hearsay rule and the right of confrontation protect a defendant from the incriminating statements of a faceless accuser who remains in the shadows and avoids the light of court").

Nor are we persuaded that the prosecutor's comments on summation warrant reversal. Again, defendant raised no objection at trial. We thus review the remarks for plain error, noting "[f]ailure to make a timely objection indicates that defense counsel did not believe the remarks were prejudicial at the time they were made," and "deprives the court of the opportunity to take curative action." State v. Timmendequas, 161 N.J. 515, 576 (1999).

Defendant now finds fault with the following snippets of the prosecutor's summation, emphasizing:

> [Melvin] was a criminal and who better than a criminal to know what other criminals are out there selling guns on our streets. . . . And the State Police were willing to use [Melvin] because they want to find the bigger fish, as Detective Doug Muraglia said, not the persons who just have guns, but the ones who sell guns. . . . But who but criminals know who are the other criminals selling weapons? If he wasn't a criminal himself, how would he have known about the criminal activity of others?

Omitted from defendant's citations are the prosecutor's references to those portions of defense counsel's summation that skillfully attempted to discredit Melvin, based on his criminal history. In that context, the prosecutor's remarks were made in response to defense counsel's argument, State v. Nelson, 173 N.J. 417, 473 (2002); not "derogatory name-calling" that has repeatedly been disapproved by our courts, see e.g., State v. Sheika, 337 N.J. Super. 228, 250

A-5586-17

(App. Div. 2001). Even if the prosecutor's remarks could be construed as improper, they did not "substantially prejudice[] defendant's fundamental right to have a jury fairly evaluate the merits of his defense." Timmendequas, 161 N.J. at 575; see also Nelson, 173 N.J. at 460.

In sum, defendant has failed to demonstrate any error or pattern of errors, rising to the level, either singly or cumulatively, that denied him a fair trial. "A defendant is entitled to a fair trial but not a perfect one." State v. R.B., 183 N.J. 308, 334 (2005).

## IV.

Lastly, defendant argues his aggregate sentence is "patently unfair, excessive and disproportionate." He asserts the trial court erroneously imposed two consecutive maximum sentences, including discretionary parole ineligibility terms, and wrongly applied the Graves Act to certain offenses. For the reasons that follow, we remand for resentencing.

Our analysis of these arguments is framed by well-settled principles. Ordinarily, we defer to the sentencing court's determination, State v. Fuentes, 217 N.J. 57, 70 (2014), and do not substitute our assessment of the aggravating and mitigating factors for that of the trial judge, State v. Miller, 205 N.J. 109, 127 (2011); see also State v. Case, 220 N.J. 49, 65 (2014). We will not disturb

a sentence that is not manifestly excessive or unduly punitive, does not constitute an abuse of discretion, and does not shock the judicial conscience. See State v. O'Donnell, 117 N.J. 210, 215-16 (1989). However, our deference "applies only if the trial judge follows the Code and the basic precepts that channel sentencing discretion." Case, 220 N.J. at 65.

Pursuant to N.J.S.A. 2C:44-5(a), when the court imposes multiple sentences of imprisonment for more than one offense, they "shall run concurrently or consecutively as the court determines at the time of sentence." "There shall be no overall outer limit on the cumulation of consecutive sentences for multiple offenses." Ibid.

In State v. Yarbough, our Supreme Court set forth the following "criteria as general sentencing guidelines for concurrent or consecutive sentencing decisions":

> (1) there can be no free crimes in a system for which the punishment shall fit the crime;
>
> (2) the reasons for imposing either a consecutive or concurrent sentence should be separately stated in the sentencing decision;
>
> (3) some reasons to be considered by the sentencing court should include facts relating to the crimes, including whether or not:

(a) the crimes and their objectives were predominantly independent of each other;

(b) the crimes involved separate acts of violence or threats of violence;

(c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;

(d) any of the crimes involved multiple victims;

(e) the convictions for which the sentences are to be imposed are numerous;

(4) there should be no double counting of aggravating factors; [and]

(5) successive terms for the same offense should not ordinarily be equal to the punishment for the first offense[.]

[100 N.J. 627, 643-44 (1985).]

A sixth factor, imposing an overall outer limit on consecutive sentences, was superseded by statute. See State v. Eisenman, 153 N.J. 462, 478 (1998) (citing N.J.S.A. 2C:44-5(a)).

Like the statutory aggravating and mitigating factors, "[t]he Yarbough factors are qualitative, not quantitative," and "applying them involves more than merely counting the factors favoring each alternative outcome." State v. Cuff,

239 N.J. 321, 348 (2019). Instead, the sentencing court must consider all the Yarbough guidelines, with emphasis on the five subparts of the third guideline. State v. Rogers, 124 N.J. 113, 121 (1991).

Concurrent or consecutive sentences are at the discretion of the sentencing judge. See State v. Carey, 168 N.J. 413, 422 (2001) (citing N.J.S.A. 2C:44-5(a)). "[I]n determining whether sentences for separate offenses should be served concurrently or consecutively, a sentencing court should focus on the fairness of the overall sentence." State v. Miller, 108 N.J. 112, 122 (1987); see also State v. Torres, 246 N.J. 246, 267-68 (2021) (reiterating that Yarbough requires the trial court to place on the record a statement of reasons for imposing consecutive sentences, which should address the overall fairness of the sentence).

At sentencing in the present matter, the trial court heavily weighed defendant's extensive criminal history, which spanned thirty years and included convictions for sexual assault, aggravated assault, robbery, burglary, and drugs. The court found aggravating factors three, six, and nine, see N.J.S.A. 2C:44-1(a)(3) (the risk of re-offense); (a)(6) (the extent of defendant's criminal history); and (a)(9) (the need to deter defendant and others), substantially outweighed the absence of mitigating factors, see N.J.S.A. 2C:44-1(b)(1) to

23

(b)(14). With those aggravating factors in view, the court denied the State's motion for a discretionary extended term[9] on defendant's first-degree unlawful possession of a handgun by a convicted felon conviction (count ten), finding instead "the need to protect the public can be adequately addressed by ordinary terms."

In imposing consecutive sentences on the drug and weapons convictions, the court assessed the relevant Yarbough factors, finding "the objectives were predominantly independent of each other. They involved separate risks, separate harms, separate criminal acts with separate dangers from which society has to be protected." Based on our review of the record, we find no abuse of discretion in the court's imposition of consecutive sentences consistent with the applicable Yarbough guidelines. However, the trial court did not address the overall fairness of the maximum, consecutive sentences imposed on defendant. Pursuant to the Court's advisement in Torres, we vacate the sentence imposed and remand for the court to provide "[a]n explicit statement, explaining the overall fairness" of the sentences imposed. 246 N.J. at 268.

---

[9] Prior to sentencing, the State waived its right to seek a mandatory extended term on defendant's second-degree possession with intent to distribute oxycodone conviction (count five). See State v. Robinson, 217 N.J. 594, 610 (2014) (barring the imposition of mandatory and discretionary extended terms in the same sentencing proceeding).

Further, the court improperly imposed the mandatory parole disqualifier of eighteen months' imprisonment under the Graves Act, N.J.S.A. 2C:43-6(c), on the fourth-degree sales of weapons convictions (counts one through four). However, disposition of a weapon under N.J.S.A. 2C:39-9(d) is not a Graves Act offense. Accordingly, on remand, the court shall resentence defendant on these convictions, without application of a mandatory term of imprisonment.

We express no position on the appropriate aggregate sentence. In all other respects, we affirm defendant's convictions. Any remaining contentions not addressed lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed, and remanded for resentencing. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

25

A-5586-17